# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-2001

MICKEY GRAYSON,

*Plaintiff-Appellant*,

*v.*

CITY OF CHICAGO,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 558—**John W. Darrah**, *Judge*.

SUBMITTED SEPTEMBER 19, 2002[1]—DECIDED JANUARY 28, 2003

Before CUDAHY, DIANE P. WOOD and WILLIAMS, *Circuit Judges*.

CUDAHY, *Circuit Judge*. The plaintiff, Mickey Grayson, appeals from a summary judgment entered against him on his claims against the City of Chicago arising from alleged employment discrimination. He claims race and age discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act of 1967 (ADEA). The District Court

---

[1] The parties have waived oral argument in this case and thus the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(f).

held that Grayson did not establish a prima facie case of discrimination and entered a judgment for the defendant on March 20, 2001. Agreeing that Grayson has not established a prima facie case of discrimination, we affirm.

I.

Mickey Grayson is an African-American man who was born in 1944. In 1985, he was hired by the City of Chicago as a carpenter in the Department of Public Works, part of which later became the Department of Transportation (CDOT). In early 1995, CDOT posted three job openings for which Grayson, then age 50, applied: General Foreman of General Trades, General Foreman of Carpenters and Foreman of Carpenters. At that time, Grayson had been serving as a Sub-foreman of Carpenters (a position identical in all but name to Foreman of Carpenters) for about four years and had been working for the City of Chicago for ten years. He had over twenty-five years experience as a journeyman carpenter, as well as substantial formal training and education. Grayson applied and interviewed for, but did not get, any of the three positions.

Stan Kaderbek, Deputy Commissioner of the Department of Transportation, Bureau of Bridges, hired three younger, white candidates instead of Grayson. According to Grayson and other witnesses, Grayson was better qualified, had more training and education and had more seniority than some or all of the men selected for the jobs. However, as both parties acknowledge, the decision really came down to one criterion: "quality and relevance of previous job experience." All three men chosen in place of Grayson were, at the time of the job posting, working in the positions for which they sought formal designation. Thus, the Acting General Foreman of General Trades successfully sought to become the General Foreman of General Trades, the Acting General Foreman of Carpenters suc-

cessfully sought to become the General Foreman of Carpenters and the Acting Foreman of Carpenters successfully sought to become the Foreman of Carpenters. Mark Fornaciari, Ron Biamonte and Mike Brubaker had been working in the respective "Acting" positions for more than, respectively, two, three and four years.

Although he had no direct evidence that Kaderbek had improperly taken into account factors such as race or age in his decisionmaking, Grayson sued the City of Chicago for discrimination under Title VII and the ADEA, proceeding under the burden-shifting mechanism of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The district court granted summary judgment for the defendant. The trial judge found that, with respect to his rejected application for the Foreman of Carpenters position, Grayson had suffered no adverse employment action, since the requested position was identical to his present position in all but name. With respect to his application for the other two positions, the trial court ruled that Grayson was not similarly situated to the applicants who received the promotions because he had not attained their level of experience. The district court also found that, even if Grayson had presented a prima facie case, the defendant had offered a nondiscriminatory reason for its hiring decisions—the other candidates' experience. However imperfect Kaderbek's hiring system may be, Grayson failed to show that the City of Chicago's stated reasons for rejecting him were pretextual.

Grayson appeals several aspects of the trial court decision. First, he argues that a difference in title alone can be the basis of an adverse employment action, and asks us to reconsider the promotion of Brubaker to Foreman of Carpenters. He then says that the basis on which Kaderbek made his decisions was pretextual when considered with other evidence, such as the extent of Grayson's experience, his seniority and a provision in the Collective

Bargaining Agreement giving preference in promotions to employees with greater seniority. Finally, he complains that by basing its promotion decisions on the outcomes of earlier promotions of individuals to interim positions, appointments unlikely to have resulted in legal action, CDOT improperly protects the earlier decisionmaker and thereby shields discriminatory acts from legal attack.

## II.

Grayson has no direct evidence of discrimination and so proceeds under the burden-shifting mechanism of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a prima facia case of employment discrimination creates a rebuttable presumption that the employer's actions, if unexplained, were the result of impermissible factors and shifts the burden of production to the employer to articulate some legitimate, nondiscriminatory reason for its actions. If the employer satisfies that burden, the plaintiff must then show that these articulated reasons are pretextual. *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

In order to establish a prima facie case in a failure-to-promote context, the plaintiff must show that 1) he belongs to a protected class, 2) he applied for and was qualified for the position sought, 3) he was rejected for that position and 4) the employer granted the promotion to someone outside of the protected group who was not better qualified than the plaintiff. *See*, *e.g.*, *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001), *cert. denied* 122 S. Ct. 1299 (2002). The defendant points out that implicit in the third element, rejection, is the requirement, in all discrimination actions, that the rejection constitute a "materially adverse employment action." *See Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510

(7th Cir. 1999). For the reasons given below, we believe that, with respect to the General Foreman of General Trades and General Foreman of Carpenters positions, Grayson fails on the fourth element of his prima facie case, and that, with respect to the Foreman of Carpenters position, Grayson fails on the third element.

As Grayson failed to make out a prima facie case of discrimination, we do not reach the question whether Grayson showed as pretextual Kaderbek's reasons for hiring others instead of Grayson for the three given positions. We note simply that we believe Kaderbek's reasons not pretextual, suggesting that Grayson's case would fail even if he could successfully claim a prima facie case. In particular, Grayson's primary evidence of pretext, Kaderbek's alleged disregard of the seniority considerations of the promotion procedure specified in the Collective Bargaining Agreement,[2] simply does not come into play if Kaderbek did not believe the applicants to be "relatively equally qualified." We will, however, briefly address Grayson's charge that the system of promotions at CDOT promotes discrimination by cloaking the true decisionmaker.

We review de novo a grant of summary judgment, reviewing the record and the inferences drawn from it in the light most favorable to the nonmoving party. *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir. 1994).

---

[2] Section 14.8 of the Collective Bargaining Agreement states in part: "The Employer shall select the most qualified applicant. . . . Where bargaining unit applicants are relatively equally qualified the Employer shall select the most senior employee of those who apply."

A.

Grayson has failed to make out a prima facie case against the City of Chicago. We consider separately his case with respect to the General Foreman of General Trades and General Foreman of Carpenters positions and his case with respect to the Foreman of Carpenters position.

1.

In order to meet the fourth element of his prima facie case, Grayson needed to show that he was as qualified as Fornaciari and Biamonte for the positions of General Foreman of General Trades and General Foreman of Carpenters respectively. However, we have held that persons who do not have the same or equivalent positions are not similarly situated with respect to a potential promotion. *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 651 (7th Cir. 2001). Prior to his promotion, Fornaciari had been serving as Acting General Foreman of General Trades for more than two years. In that capacity, he was responsible for "coordinating the work of twelve different trades, supervising the order of materials and supplies for all of those trades, and supervising the implementation of a progressive discipline program for all of the employees in those trades." Def. City of Chicago's Rule 12(m) Statement of Undisputed Material Facts in Supp. of City of Chicago's Mot. for Summ. J. (City of Chicago Rule 12(m) Statement), para. 15. Biamonte had been serving as the Acting General Foreman of Carpenters for over three years. He "coordinated the work of nine to ten full crews of carpenters, supervised the subforemen for each of the crews, and served as the first level of review in the implementation of a progressive discipline program for all the employees in the crews." City of Chicago Rule 12(m) Statement, para. 16.

While Grayson did allege that he was as qualified as Fornaciari and Biamonte, *see* Second Am. Compl., paras. 14, 19, Grayson Aff., paras. 31, 41, 46, Grayson did not show that he has held equivalently demanding positions or has had job experience comparable to the successful applicants. Grayson's experience as a Sub-foreman of Carpenters is not equivalent to the experience Fornaciari and Biamonte have had in serving on an acting basis in the very positions to which they have been promoted. Grayson therefore has not met the fourth element of his prima facie case, justifying summary judgment against him. Alternatively, we believe that even if Grayson had made out a prima facie case, the City of Chicago's reason for promoting Fornaciari and Biamonte, that they were serving in the acting positions, was a legally sufficient reason that Grayson has not shown to be pretextual.

2.

With respect to the Foreman of Carpenters position, Grayson can easily show that he was similarly situated to Brubaker. Both Grayson and Brubaker were serving in positions identical in all but name to Foreman of Carpenters: Brubaker was Acting Foreman of Carpenters and Grayson was Sub-foreman of Carpenters. For a closely related reason, however, Grayson's case fails. Because Grayson's position at the time of the hiring decisions was identical in all but title to the position that he was denied, the rejection of his application for promotion was not a materially adverse employment action.

Grayson argues that, under *Crady v. Liberty National Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993), rejection of a change in job title alone is a materially adverse employment action. We do not agree. While *Crady* does say that "a less distinguished title" *could indicate* an adverse employment action, it goes on to

hold that the loss of an "Assistant Vice President" title, when similar responsibilities and identical salary and benefits are retained, does not constitute an adverse employment action. *Id.* Grayson acknowledges that in all respects other than title—including responsibilities, salary and benefits—the Sub-foreman position is equivalent to the Foreman position. The district court held that this equivalence means that Grayson's being passed over for what was only a loftier title was not a materially adverse employment action. We must agree. *See also Forkkio v. Powell*, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002) (holding that an employee cannot establish an adverse action on the basis that a reassignment deprives him of prestige).

This is not to say, however, that the loss of a title may not prove more significant in other discrimination contexts. For example, Grayson argues that a difference in title may result in different job promotion opportunities. Indeed, Grayson has already faced an instance where his being the Sub-foreman, rather than the Acting Foreman, apparently resulted in another employee's getting the Foreman position. But there was no materially adverse employment action in the present situation precisely because all three differently titled positions are essentially identical. However, should there be in the future a possible promotion to a clearly higher (with higher responsibilities, salary or benefits) position open to both a Foreman and to a Sub-foreman, an actual promotion, it might well be suspicious if CDOT were to promote based on which one of the two identical positions the applicant held. Such a basis (title only) for promotion would not only be likely to allow a potential plaintiff to meet the fourth element of his prima facie discrimination case— according to *Hoffman-Dombrowski*, candidates in "equivalent positions" are similarly situated—but would also hint that the earlier denial of a promotion was actually

a materially adverse employment action. That is, if the City of Chicago has a habit of distinguishing between promotion candidates in equivalent but differently titled positions, title alone may be more significant than it appears to be here. In the absence of such a scenario, however—after all, Grayson actually was promoted to Foreman just a year after the events described in this lawsuit—there is no materially adverse employment action.

There is, however, at least one suggestion that the City of Chicago would place such reliance on title alone. Apparently arguing that Grayson does not meet the fourth element of his prima facie case with respect to the Foreman of Carpenters position, the City of Chicago's appellate brief states that "[u]nlike Grayson[,]" Brubaker "had several years of experience serving in the very position[ ] to which [he] was promoted." Appellee's Br. at 24. But since the City of Chicago also argues that the Subforeman's and the Foreman's duties are equivalent, *id.* at 19-20, the City's contention is insupportable. The city cannot have it both ways. With respect to the Foreman of Carpenters position, Kaderbek should have resorted to other criteria; the fact that Brubaker was Acting Foreman of Carpenters had no significance when Grayson had experience in an equivalent position. The rating forms used in evaluating the candidates, however, show that Brubaker, for whatever reason, scored higher than Grayson. Whether this higher score would defeat Grayson's claim that he was similarly situated to Brubaker or provide a nondiscriminatory reason that Grayson would have had to show to be pretextual, it would likely be enough to defeat Grayson's discrimination suit, even if we were to have held that this rejection was a materially adverse employment action. As we noted above, the fact that the promotion from Sub-foreman to Foreman of Carpenters is not material defeats Grayson's claim altogether.

B.

Grayson in his briefs passionately asks us to consider a hypothetical: What if the acting position assignments were made based on experience gained through interim assignments which were in turn made on a discriminatory basis? Because the interim assignments were temporary and not accompanied by higher pay, the person discriminated against may not have had a legal basis or a practical occasion to press a lawsuit. But the victim may discover later that he has been defeated by a discriminatory series of personnel actions that effectively cloaked the identity of the decisionmaker. Grayson insinuates that Kaderbek's status quo-maintaining hiring pattern acts to perpetuate discrimination that took place in an earlier stage of the employment relationship. However, Grayson's concern that such a belated discovery of an earlier discrimination in a series of actions would have no effective remedy (due to the operation of the statute of limitations), Appellant's Reply Br. at 6, is not well-founded. At the very least, such a plaintiff would have the opportunity to plead his set of apparently related actions and ask us to treat this series as a continuing violation or perhaps request equitable tolling. *See generally CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 992-93 (7th Cir. 2002) (describing the continuing violation doctrine as applied to Title VII actions and the requirements of the equitable tolling doctrine). Grayson has not presented any evidence that his hypothetical has in fact occurred, nor did he raise this theory before the EEOC or the district court. This argument, therefore, has been waived. *See*, *e.g.*, *Perry v. Sullivan*, 207 F.3d 379, 383 (7th Cir. 2000) (noting that arguments raised for the first time on appeal are routinely deemed waived); *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (holding that there has to be "a reasonable relationship" between the allegations of an EEOC charge and the claims contained in a complaint).

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

                                _____

*Clerk of the United States Court of Appeals for the Seventh Circuit*