# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-1736

JAMES B. TWISDALE,

Plaintiff-Appellant,

v.

JOHN W. SNOW,
Secretary of the Treasury,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 00-C-860-Y/F—**Richard L. Young**, *Judge*.

ARGUED DECEMBER 10, 2002—DECIDED APRIL 10, 2003

Before FLAUM, *Chief Judge*, and POSNER and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. James Twisdale, an employee of the Internal Revenue Service, brought suit against his employer under Title VII of the Civil Rights Act of 1964, charging that black supervisors harassed him because he is white and retaliated against him for his opposing a black employee. The district court granted summary judgment for the defendant.

The pertinent facts, stripped to bedrock and viewed as favorably to Twisdale as the record will permit (which is

not very favorably), are as follows. In 1997 Twisdale was chief of the IRS's Quality Measurement Branch in Indianapolis; his pay grade was GS-14. One of the employees whom he supervised was a black woman named Barry Madison. She filed a charge of employment discrimination on grounds of race and sex with the IRS's equal employment office. The charge was investigated, and Twisdale participated in the investigation in various ways, for example by giving information to the EEO investigator. Twisdale was skeptical of Madison's claim. Later he was instructed by his superiors to investigate an alleged ethical violation by Madison. He did so and determined that she had indeed committed an ethical violation, though a minor one, and he issued a reprimand to Madison—precipitating a charge of discrimination by her against him. He claims that as a result of his opposition to Madison's claim of discrimination, as well as his reprimanding her and being white, he was subjected to various humiliations by his black supervisors. The humiliations of which he complains included audits of some of the programs that he administered, a delay in giving him "acting supervisor" assignments, which apparently were prized, and above all the removal from his purview of the Disclosure Office, which had three employees and is responsible for protecting taxpayers' privacy, and of the Problem Resolution Program, a program for dealing with taxpayer complaints. Madison's original complaint of discrimination was eventually resolved in her favor, but there was never a determination that Twisdale had discriminated against her, although the IRS agreed to remove his reprimand of her from her personnel file.

The period of harassment is alleged to have continued through August of 1999. Yet during this period Twisdale received generous performance-related bonuses and coveted assignments to IRS national task forces, though he

argues that he received these assignments because the removal of the Disclosure Office and the Problem Resolution Program from his supervision left him with unwanted time on his hands. The following year he was promoted to a more responsible job at the next-higher pay level, GS-15, and while the promotion required him to relocate to West Virginia he had made clear in applying for the promotion that he was willing to move and indeed he had listed 27 cities, though none in West Virginia, to which he would be happy to transfer. He accepted the transfer to West Virginia and remains employed by the IRS there, in a position as we said of greater responsibility than he had in Indianapolis.

There is one legal issue that is both clean and novel, and although the government reserved it rather than arguing it as an alternative ground for upholding the district court's decision, it was thoroughly ventilated at the argument of the appeal and being a pure issue of law we can with propriety decide it despite its not having been briefed. See *Singleton v. Wulff*, 428 U.S. 106, 121 (1976); *Sestric v. Clark*, 765 F.2d 655, 657 (7th Cir. 1985); *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 142 (2d Cir. 2000); cf. *Hill v. American General Finance, Inc.*, 218 F.3d 639, 642, 645 (7th Cir. 2000).

The provision of Title VII that concerns retaliation forbids an employer "to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the statute. 42 U.S.C. § 2000e-3(a). (The retaliation provisions of the other principal federal employment discrimination statutes are materially identical. See 29 U.S.C. § 623(d) (Age Discrimination in Employment Act); 29 U.S.C. § 794(d) (Rehabilitation Act); 42 U.S.C. § 12203(a) (Americans with Disabilities Act).)

Read literally, the provision protects even an employee who like Twisdale participates in an investigation on the side of the employer rather than on the side of the employee who made the charge of discrimination. Suppose hypothetically that Twisdale had opposed Barry Madison's charge of race and sex discrimination because he is a racist and a sexist and that he had been fired for having opposed her charge. On his view of the scope of the retaliation provision, he would be entitled to reinstatement. He is claiming in effect the absolute immunity that prosecutors and judges enjoy when performing prosecutorial and judicial functions, respectively.

How such an interpretation could promote the policy of Title VII is beyond us. The statute has the limited purpose of preventing certain forms of discrimination. The retaliation provision backs up this central thrust by protecting employees who invoke the statutory machinery for rectifying violations. We cannot find any hints in the case law, the legislative history, interpretations by government agencies, or scholarly commentary of any purpose of protecting employees whose resistance to charges of discrimination made by their coworkers provokes the employer's ire. Until this case, so far as we can determine, everyone concerned in the administration of Title VII and cognate federal antidiscrimination statutes had assumed that the retaliation provision was for the protection of the discriminated against, and not their opponents. E.g., *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997); *Heuer v. Weil-McLain*, 203 F.3d 1021, 1023 (7th Cir. 2000); *Petersen v. Utah Dept. of Corrections*, 301 F.3d 1182, 1189 (10th Cir. 2002); *Castellano v. City of New York*, 142 F.3d 58, 69 (2d Cir. 1998). As in the hypothetical case we put, the employer would be sitting on a razor's edge if it could not discipline employees whose opposition to discrimination charges

placed the employer in jeopardy of violating an employee's statutory rights.

Twisdale did participate in an investigation of a discrimination charge, and so comes within the literal terms of section 2000e-3(a). But awkwardly, since the first act protected by the section is making a charge, which suggests that the subsequent acts listed—testifying, assisting, and participating—refer to acts in support of the charge. He would be on solider ground if instead of "because he has made a charge" the statutory words were "because he has made *or opposed* a charge." In effect he asks us to insert the term that we have italicized. But, as we have explained, this would merely gum up the statutory works. Perverse and absurd statutory interpretations are not to be adopted in the name of literalism; they merely show the limitations of literalism as a mode of interpretation.

Twisdale has another string to his bow, however; for remember that he is arguing that he was harassed on account of his race and not just on account of his participation in the investigation of Barry Madison's charge of discrimination. (His further charge that he was harassed for reprimanding Madison seems to be a variant of his race charge. If not, it would have no purchase in the statute.) That claim fails too, because the harassment of which he complains was not severe enough to have altered the terms or conditions of his employment. Title VII does not create a remedy against harassment as such; the harassment must—this is explicit in the statute—amount to discrimination " 'with respect to [the employee's] compensation, terms, conditions, or privileges of employment.' 42 U.S.C. § 2000e-2(a)(1). The cases paraphrase this requirement either as 'a tangible employment action,' that is, 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing a significant change in benefits,' or as a 'materially adverse employment action.' " *Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 743-44 (7th Cir. 2002) (case citations omitted); see also *Clark County School Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (per curiam); *Allen v. Chicago Transit Authority*, 317 F.3d 696, 701 (7th Cir. 2003); *Silk v. City of Chicago*, 194 F.3d 788, 807-08 (7th Cir. 1999); *Gu v. Boston Police Dept.*, 312 F.3d 6, 14 (1st Cir. 2002).

To determine whether this requirement has been satisfied requires consideration of the employee's total workplace environment; and here the performance bonuses, the task force appointments, and the promotion to a more responsible and better-paying job go quite far enough to cancel, in any objective assessment, any unpleasantness that Twisdale might have experienced because his programs were audited and one program and three employees were removed from his purview and he didn't get as many acting-supervisor assignments as he would have liked. In any event, that unpleasantness, even if not balanced by rewards both tangible and intangible, falls short of the level of severity required to trigger judicial intervention under Title VII. Twisdale emphasizes the diminution of his responsibilities; and it is true if paradoxical that lightening a worker's load can constitute actionable harassment, *Dahm v. Flynn*, 60 F.3d 253, 256-57 (7th Cir. 1994)—but only if by depriving him of the opportunity to maintain and improve his skills it impedes his career, see *Grayson v. City of Chicago*, 317 F.3d 745, 750 (7th Cir. 2003); *Herrnreiter v. Chicago Housing Authority, supra*, 315 F.3d at 744; *Freedman v. MCI Telecommunications Corp.*, 255 F.3d 840, 847-48 (D.C. Cir. 2001), which did not happen here, as indicated by his promotion. *Grayson v. City of Chicago, supra*, 317 F.3d at 750. The statute does not protect the hypersensitive employee who is not deliberately targeted

by the employer from the irritations endemic to the employment relation. *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976, 978 (7th Cir. 2000); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1483 (3d Cir. 1990).

AFFIRMED.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*