Valentina PEREZ, Plaintiff–Appellant,

v.

NORWEGIAN–AMERICAN HOSPITAL, INCORPORATED, Ivan Rivera and Steve Dahl, Defendants–Appellees.

No. 03–1619.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 2003.

Decided March 5, 2004.

Maria R. Owens, Owens & Robinson, Chicago, IL, for Plaintiff–Appellant.

Stephen R. Swofford, Aimee E. Delaney, Hinshaw & Culbertson, Chicago, IL, for Defendants–Appellees.

Before POSNER, RIPPLE, and WILLIAMS, Circuit Judges.

## ORDER

Valentina Perez claims that a co-worker, Steve Dahl, sexually harassed her by slapping her buttocks with a notebook he was carrying. After she reported the incident, she claims that she was ostracized at work, passed over for a promotion, paid less than a male co-worker and eventually forced to quit. She sued her employer, Norwegian–American Hospital, for sex discrimination and retaliation. She also alleged a state law claim of battery against Dahl, and a state law claim of emotional distress against Dahl, the hospital, and her most recent supervisor, Ivan Rivera. The district court concluded that Ms. Perez could not establish discrimination or retaliation and granted summary judgment to the defendants. We affirm.

I

## INTRODUCTION

Ms. Perez began working at Norwegian–American Hospital in 1989, first as a security officer and later as a shift supervisor. Ms. Perez contends that, in January 2000, Dahl, a fellow supervisor, slapped her buttocks with a notebook as she exited an elevator. Ms. Perez complained to Joseph Byrnes, her superior at the time, that Dahl had sexually harassed her. Byrnes was near the elevator when the incident occurred, but denied seeing it. Ms. Perez also reported the incident to the hospital's human resources department. Although Ms. Perez complains that the hospital ignored her report, she admitted during her deposition that human resources director Russ Dickow met with both her and Byrnes to discuss Dahl's behavior. The hospital warned Dahl to avoid any future contact with Ms. Perez.

Ms. Perez alleged in her complaint that, after she reported Dahl's behavior, she was subjected to retaliation. It started, she alleged, when co-workers immediately "shunned her and isolated her and perpetuated rumors that she would be demoted." R.90 at 2. She also alleged that Dahl "followed her and watched her while simultaneously writing in a notebook." R.89 at 23, response 204.

Ms. Perez alleged that the retaliation continued six months later when she was denied a request for "comp" time after a male co-worker's request was granted. According to Ms. Perez, the hospital gave supervisory employees "comp" time, or paid time off, in exchange for any overtime they had worked. She contends that the hospital granted a request for "comp" time made by Ben Espiritu, a fellow shift supervisor, but denied her repeated requests. The hospital, on the other hand, denies that supervisory employees are eligible for "comp" time, and asserts that Espiritu was granted "comp" time only because of a mistake by a new manager who did not know that supervisory employees were ineligible.

Next, Ms. Perez alleged that she was retaliated against when she was passed over for a promotion that went instead to Rivera. She claims that she was more qualified for the promotion than Rivera because, even though they began their employment at the hospital at about the same time, Ms. Perez had ten months' prior experience as a security officer when she was hired while Rivera had none. She also claims that she was more qualified because, through the years, she "received superior training, certifications, evaluations, and commendations for outstanding performance" and because she was an "exemplary officer and leader." Perez Br. at 4 Ms. Perez asserts that, despite her superior qualifications, the hospital promoted Rivera without even posting the opening. The hospital disputes that it failed to post the opening and offered evidence from em-

ployees, including Rivera, who said they had seen the posting. R.39, Tab 8 at ¶¶ 35–36; R.46–4 at 81; R.73, Tab 5 at 64. The hospital claims that it did not promote Ms. Perez because she failed to apply for the opening and because Rivera was more qualified, noting that Rivera had more supervisory experience because he was promoted to shift supervisor two years before Ms. Perez.

On July 25, 2000, six months after reporting Dahl's conduct to the hospital, Ms. Perez filed a charge of discrimination and retaliation with the EEOC. Two days later, she contends that Rivera—now her supervisor—harassed and retaliated against her by placing a false disciplinary report in her file accusing her of excessive tardiness, not responding to her pager during an emergency and driving a hospital vehicle at night with its headlights turned off. R.91–2, Tab 12. As a result of the disciplinary write-up, Ms. Perez claims that Rivera transferred her to the less desirable overnight shift. The transfer prompted Ms. Perez to file a second EEOC charge alleging that she was transferred in retaliation for filing the earlier charge.

Ms. Perez alleged that, as a result of the continued harassment, she lost sleep, suffered anxiety attacks and felt humiliated. She sought medical attention and went on sick leave September 19, 2000. She never returned to work and eventually tendered a short resignation letter two months later; the letter did not give a reason for her resignation. R.39, Tab 4. In January 2001, Ms. Perez filed a third EEOC charge recounting her earlier allegations and adding that she had been constructively discharged.

After receiving a right-to-sue letter from the EEOC, Ms. Perez filed suit. In addition to alleging discrimination,[1] retaliation, battery and emotional distress, Ms. Perez alleged that the hospital denied her equal pay because it awarded "comp" time only to similarly-situated male employees.

The court granted summary judgment to the defendants on all of Ms. Perez's claims. The court concluded that Ms. Perez's evidence that she was slapped and shunned did not establish discrimination because the conduct was not "severe or pervasive," and therefore did not create a hostile work environment. *Perez v. Norwegian–Am. Hosp.*, 243 F.Supp.2d 792, 801–04 (N.D.Ill. 2003). The court also concluded that Ms. Perez could not establish retaliation because 1) her co-workers' conduct (shunning and gossiping about her) was not severe, and 2) the other incidents of which she complains (the decision to promote Rivera over her and to transfer her to a different shift, and the false disciplinary reports that Rivera allegedly placed in her file) happened long after she reported Dahl's conduct to the hospital and before the hospital found out about her EEOC charge. *Id.* at 804. As for Ms. Perez's equal pay claim, the court granted summary judgment because she failed to develop any argument in support of the claim. Because she could not establish any of her federal law claims, the court declined to exercise supplemental jurisdiction over Ms. Perez's state law claims.

## II

## ANALYSIS

### A. Sexual Harassment

■ Ms. Perez first argues that the district court erred in concluding that evi-

---

1. Ms. Perez alleged sex discrimination under 42 U.S.C. § 1981, but because only race discrimination claims may be brought under that statute, the district court construed Ms. Per-

ez's claim as one brought under Title VII. *See Friedel v. City of Madison*, 832 F.2d 965, 966–67 n. 1 (7th Cir.1987).

dence about receiving a slap on the buttocks and being ostracized by co-workers was not sufficiently severe or pervasive to survive summary judgment. In order to establish discrimination in the form of sexual harassment, Ms. Perez needed to show that she was subjected to the harassment because of her sex, and that the harassment was so " 'severe or pervasive as to alter the conditions of [her] employment and create an abusive working environment,' " measured not only subjectively but also objectively. *Hilt–Dyson v. City of Chicago,* 282 F.3d 456, 462–63 (7th Cir.) (internal citation omitted), *cert denied,* 537 U.S. 820, 123 S.Ct. 97, 154 L.Ed.2d 27 (2002). In short, she had to show that her work environment was "hellish." *Rogers v. City of Chicago,* 320 F.3d 748, 752 (7th Cir.2003).

Ms. Perez contends that the single slap to her buttocks was sufficiently severe to constitute harassment. The district court likened the slap to an "expression of camaraderie ... not unlike that observed on national television between athletes, with no intended or perceived sexual connotation." *Perez,* at 802. We disagree with the court's suggestion that the slap on the behind with a notebook is somehow comparable to the gesture of athletes in encouraging each other. We also note our disagreement with the court's suggestion that the slap could not have been sexually-based conduct. Nevertheless, Ms. Perez has not shown that the slap constituted sexual harassment because it was not objectively abusive. The contact Ms. Perez has alleged is not unlike the contact at issue in *Adusumilli v. City of Chicago,* 164 F.3d 353, 362 (7th Cir.1998), where we

affirmed summary judgment entered against a plaintiff who alleged that a co-worker "poked her buttocks" on one occasion.[2] Ms. Perez attempts to distinguish *Adusumilli* by claiming that her situation was more egregious because she saw Dahl slap her, unlike the plaintiff in *Adusumilli* who "did not actual [sic] see her co-worker make contact with her." Perez Reply Br. at 5. *See Adusumilli,* 164 F.3d at 357. This distinction does not establish, however, that Ms. Perez's workplace was "hellish." Moreover, the fact that the plaintiff in *Adusumilli* did not see her co-worker slap her is not the reason that the contact in that case was deemed inoffensive.

■ Ms. Perez also contends that she was harassed when co-workers gossiped about her and when Dahl watched her and took notes. Ms. Perez never asserts, however, that she was the subject of gossip because of her sex, *see Pasqua v. Metro. Life Ins. Co.,* 101 F.3d 514, 517 (7th Cir. 1996) (noting that people spread rumors "for any number of reasons having nothing to do with gender discrimination"), or that Dahl looked at her in an improperly sexual way such as "leering," *see Hilt–Dyson,* 282 F.3d at 464 (supervisor does not have "license to leer" at subordinate's chest). Therefore, the district court properly granted summary judgment to the hospital on Ms. Perez's sexual harassment claim.

## B. Failure To Promote

Ms. Perez also argues that the district court incorrectly assessed her qualifications for a promotion to lieutenant in granting summary judgment to the hospital on her failure-to-promote claim. Ms.

---

**2.** We disagree with the defendants' attempt at oral argument to compare the slap Ms. Perez alleged to the uniform inspection in *Hilt–Dyson.* The supervisor in *Hilt–Dyson* had a legitimate reason for requiring the plaintiff to raise her arms while he inspected her police uniform, even though the plaintiff found the inspection uncomfortable. *Hilt–Dyson,* 282 F.3d at 464. To the contrary, in this case we can discern no legitimate purpose behind Dahl's slapping Ms. Perez on the buttocks.

Perez attempted to establish a *prima facie* case that the hospital failed to promote her in violation of Title VII by showing that 1) she belonged to a protected group; 2) she applied for and was qualified for a promotion; 3) she was rejected for the promotion; and 4) the person promoted had similar or fewer qualifications for the job. *Grayson v. City of Chicago,* 317 F.3d 745, 748 (7th Cir.2003). In support, Ms. Perez offered evidence that she had worked for the hospital as long as Rivera, the individual who was promoted. She also noted that she had attended more classes to study security-related issues and therefore earned more certifications than Rivera had.

The district court concluded that Ms. Perez could not establish a *prima facie* case for two reasons. First, the court observed, Ms. Perez never applied for the job. This fact appears to be disputed, however. Ms. Perez contends that she requested the promotion orally rather than applying in writing because the hospital never posted the vacancy; she adds that Rivera received the promotion without applying for it at all. The hospital, however, counters that it posted the vacancy, that other employees saw it and that it hired the only person who applied, Rivera. It also argues that Rivera was more qualified than Ms. Perez because he had worked at the hospital one month longer than Ms. Perez and had two years' more experience as a supervisor than she had.

■ Even if the court erred by accepting as undisputed the hospital's assertion that Ms. Perez never applied for the promotion, it correctly concluded that Ms. Perez failed to show that she was more qualified for the job. It is undisputed that Rivera worked at the hospital one month longer than Ms. Perez and that he had been promoted to shift supervisor two years earlier than she had been. Ms. Per-ez nevertheless submits that she was more qualified because, unlike Rivera, she had previous experience as a security guard and had earned more security-related certifications than Rivera. Ms. Perez supports her assertions with only her own self-serving statements that her certifications rendered her better qualified; such self-serving statements are insufficient to defeat summary judgment. *Hall v. Bodine Elec. Co.,* 276 F.3d 345, 354 (7th Cir.2002) (plaintiff could not establish sex discrimination solely through "conclusory allegations and self-serving affidavits"). We therefore agree with the district court that Ms. Perez failed to establish that she was as qualified as Rivera for the promotion.

## C. Retaliation

Next, Ms. Perez argues that the court failed to recognize the connection between her reports of sexual harassment and the hostility she claims she endured in retaliation. Ms. Perez asserts that she established retaliation under the direct method, which requires a plaintiff to show that 1) she engaged in a protected activity; 2) she suffered an adverse employment action; and 3) the two were causally linked. *See Sitar v. Indiana Dep't of Transp.,* 344 F.3d 720, 728 (7th Cir.2003) (distinguishing between direct method of establishing retaliation and the indirect method set forth in *Stone v. City of Indianapolis Public Utilities Division,* 281 F.3d 640, 644 (7th Cir.), *cert. denied,* 537 U.S. 879, 123 S.Ct. 79, 154 L.Ed.2d 134 (2002)).

■ Ms. Perez contends that she established that co-workers began to shun her and gossip about her being demoted in retaliation for reporting to the hospital in January 2000 that Dahl slapped her. But she has failed to establish that she suffered an adverse employment action because she did not show that the treatment

she received from her co-workers in any way "altered the terms or conditions of [her] employment." *See Twisdale v. Snow,* 325 F.3d 950, 953 (7th Cir.), *cert denied,* —— U.S. ——, 124 S.Ct. 957, 157 L.Ed.2d 793 (2003); *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996) (the perceptions of others are not terms or conditions of employment, and therefore cannot be adverse employment actions). She has also failed to establish a causal connection between reporting Dahl in January and being reprimanded by Rivera and transferred to the overnight shift in July. The reprimands and transfer occurred six months after Ms. Perez reported Dahl's conduct, too lengthy a time lapse to establish a causal connection under the direct method. *See Franzoni v. Hartmarx Corp.,* 300 F.3d 767, 773 (7th Cir.2002).

Next, Ms. Perez contends that she established that the July reprimands and transfer were connected to a second protected activity—her filing of a charge of discrimination with the EEOC just two days earlier. But she offered no evidence that Rivera knew about the charge when he transferred her, and even admits that the hospital did not receive a copy of her EEOC charge until August 9. R.89 at 8, response 69. Ms. Perez claims that, after the hospital received her EEOC charge, Rivera falsely accused her of failing to run a security check and of arriving to work late one day. But she has admitted that the accusations were true, R.91–1, Tab 5 at 655; R.89 at 9, responses 74 & 75, which undermines any inference that the accusations were retaliatory. *See Wallscetti v. Fox,* 258 F.3d 662, 668–69 (7th Cir.2001). Furthermore, Ms. Perez has not alleged that they were accompanied by any "tangible job consequence," and therefore cannot establish any adverse employment action. *Grube v. Lau Indus., Inc.,* 257 F.3d 723, 729 (7th Cir.2001).

█ Finally, Ms. Perez argues that she established that she was constructively discharged for filing charges with the EEOC. In order to establish constructive discharge, Ms. Perez must show that her working conditions were unbearable. *EEOC v. Univ. of Chicago Hosps.,* 276 F.3d 326, 331–32 (7th Cir.2002). However, as we have discussed earlier, Ms. Perez failed to show that being shunned, reprimanded and demoted resulted in a hostile work environment, let alone an unbearable one. *See, e.g., id.* at 331–32 ("we require the plaintiff to demonstrate a discriminatory work environment 'even more egregious than the high standard for hostile work environment'") (internal citation omitted); *Simpson v. Borg–Warner Auto., Inc.,* 196 F.3d 873, 877–78 (7th Cir.1999) (death threats create an intolerable work environment; false reprimands and assignment to a fallow sales territory are merely unpleasant, not intolerable).

## D. Equal Pay

Ms. Perez argues generally that the district court erred when it granted summary judgment on her claim under the Equal Pay Act, 29 U.S.C. § 201 *et seq.,* because she offered evidence that the hospital gave "comp" time to a male employee but not to her. The district court concluded that Ms. Perez could not pursue an equal pay claim because she did not allege one under the Equal Pay Act in her complaint. Opinion & Order at 6 n. 6 (attached as Appendix A to Perez's brief). However, notice pleading does not require a plaintiff to plead legal theories. Therefore, the district court erred by granting summary judgment on this basis. *See Shah v. Inter–Cont'l Hotel Chicago Operating Corp.,* 314 F.3d 278, 282 (7th Cir.2002).

In order to survive summary judgment on her equal pay claim, Ms. Perez needed to establish a *prima facie* case with evi-

dence that 1) she was compensated differently than a male employee; 2) she and the male employee performed equal work requiring equal skill, effort and responsibility; and 3) they had similar working conditions. *See Cullen v. Indiana Univ. Bd. of Trs.*, 338 F.3d 693, 698 (7th Cir. 2003); *Wolf v. N.W. Indiana Symphony Soc'y*, 250 F.3d 1136, 1144–45 (7th Cir. 2001). To show that she was compensated differently than a male employee, Ms. Perez offered deposition testimony from fellow shift supervisor Benjamin Espiritu, who testified that the hospital gave "comp" time to shift supervisors in lieu of overtime pay, and that he had received it "[a] few" times in the past. R.91–2, Ex.7 at 64–65. In addition, Ms. Perez offered her own deposition testimony to establish that the hospital repeatedly approved male shift supervisors' requests for "comp" time, but denied her request. R.91–1, Ex.5 at 60, 529–30. Ms. Perez also relied upon the Employee Handbook to support her argument that shift supervisors were eligible for "comp" time, although curiously the excerpts she cited make no mention of "comp time." R.91–2, Ex.20 at 8–9.

The hospital disputes that it wrongly denied "comp" time to Ms. Perez by offering deposition testimony from the human resources director that shift supervisors are ineligible for "comp" time, and with time records showing that no shift supervisor other than Espiritu received it. R.39, Ex.8 at ¶ 9; R.39, Ex.11. As for the "comp" time Espiritu received, the hospital offered time records to show that it was an isolated incident that happened once in December 1999. R.39, Ex.8 at ¶ 9; R.39, Ex.10.

Although the hospital maintains that shift supervisors are ineligible for "comp" time, Ms. Perez created a disputed question of fact about the issue with evidence that at least one, and maybe more, male employees received "comp" time but she did not. Nevertheless, Ms. Perez has failed to establish the remaining elements of a *prima facie* case with evidence that any male employee who received "comp" time was similarly situated to her. The only evidence Ms. Perez offered to support her contention that she was similarly situated to Espiritu was Espiritu's deposition testimony that they share the same job title. R.91–2, Ex.7 at 20. Ms. Perez asserts, in conclusory fashion, that they were similarly situated; she offered no evidence of whether their jobs shared a "common core" of tasks, what work Espiritu performed, under what conditions, how his responsibilities and skills compared to hers or when Espiritu performed the work for which he received "comp" time. *Cullen*, 338 F.3d at 698. Faced with this lack of evidence, Ms. Perez cannot establish a *prima facie* case under the Equal Pay Act.

### E. State Law Tort Claims

Finally, Ms. Perez argues that the district court should have exercised supplemental jurisdiction under 28 U.S.C. § 1367 over her state law claims against defendants Dahl and Rivera. But once the court granted summary judgment on all of Ms. Perez's federal claims, it was free to decline to exercise jurisdiction over her state law claims. *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 896 (7th Cir.2001).

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED