Vanessa L. HOBSON, Plaintiff–Appellant,

v.

John E. POTTER, Postmaster General, Defendant–Appellee.

No. 03–2632.

United States Court of Appeals, Seventh Circuit.

Argued April 21, 2004.

Decided June 2, 2004.

John P. DeRose, Anthony T. Capua, DeRose & Associates, Hinsdale, IL, for Plaintiff–Appellant.

Samuel B. Cole, Office of the United States Attorney, Chicago, IL, for Defendant–Appellee.

Before COFFEY, MANION, and KANNE, Circuit Judges.

## ORDER

Vanessa Hobson, a black woman, started working in the Operations Programs Support Department at the United States Postal Service office in Carol Stream, Illinois, in 1993. Hobson's direct supervisor was James Van Schindel, a white man, whom she married in February 2001. Upon learning of the marriage, Van Schindel's supervisor, Glenn Smith, transferred

him out of the Carol Stream facility, but he was later reinstated after filing a successful grievance. Smith then transferred Hobson to the Marketing Department at the Carol Stream facility. Hobson filed this suit alleging that her transfer was based on racial discrimination and retaliatory motives, pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The postal service filed a summary judgment motion stating that Hobson had been transferred because having a husband supervise his wife created a conflict of interest. The district court granted the postal service's summary judgment motion, finding that Hobson had failed to show that the postal service's proffered reason for transferring her was pretextual. Hobson has appealed, and we affirm the district court's judgment.

In this de novo review we consider the evidence in the light most favorable to Hobson. *See Hardy v. Univ. of Ill. at Chicago*, 328 F.3d 361, 364 (7th Cir.2003). Hobson was hired as a temporary employee in the Operations Programs Support Department at the Carol Stream postal facility in 1993. In 1997 Hobson applied for a permanent position in Operations and Van Schindel, who was the selecting official, chose Hobson for the position.

In August 1999 Van Schindel's supervisor, Glen Smith, along with an attorney for the postal service, met with Van Schindel and asked Van Schindel about a rumor that he and Hobson were involved in a personal relationship. Van Schindel told Smith that his relationship with Hobson was strictly professional, and Smith told Van Schindel to inform him if a personal relationship developed.

Van Schindel and Hobson began dating in March or April 2000, but they did not inform Smith. Three months later, in July 2000, Van Schindel recommended that Hobson receive a $400 cash bonus for her "creative efforts and organizational skills." Van Schindel and Hobson got engaged in December 2000 and married in February 2001. Smith found out about the marriage through an anonymous phone call at the end of February 2001. Smith went to the local courthouse, and after confirming that the two were married, confronted Van Schindel with a copy of the marriage license. Smith issued Van Schindel a disciplinary action for failing to notify him of the marriage and transferred Van Schindel to the Forest Park, Illinois, postal facility.

Van Schindel filed a grievance with the EEO protesting his transfer. The postal service's Human Relations manager, William Simmons, agreed that the transfer was too harsh, and Van Schindel returned to his position in Carol Stream. Before Van Schindel returned, however, Smith transferred Hobson to the Marketing Department, which was located in a room down the hall. After the transfer, Hobson continued to do the same job she had done when she worked in the Operations Department, but she reported to a different supervisor. Hobson's transfer did not affect her title, grade, salary, or benefits. Hobson then filed an unsuccessful EEO complaint claiming that her transfer was racially motivated and in retaliation for Van Schindel's EEO grievance.

We review a grant of summary judgment de novo. *Volovsek v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 686 (7th Cir.2003). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Hobson sought to prove her claims using the indirect, burden-shifting method set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Accordingly, she had to establish a

prima facie case of discrimination or retaliation. If successful, the postal service would have to articulate a non-invidious reason for its decision; if it succeeded, Hobson would have to present competent evidence that the proffered nondiscriminatory reason was pretextual. *Id.* at 802. Because Hobson's § 1981 and Title VII claims are analyzed under the same rubric, we analyze them simultaneously. *See Alexander v. Wis. Dep't of Health and Family Servs.*, 263 F.3d 673, 681–82 (7th Cir. 2001).

To establish a prima facie case of discrimination, Hobson must show that (1) she is a member of a protected class, (2) she was meeting the employer's legitimate business expectations, (3) she suffered an adverse employment action, and (4) the employer treated similarly situated employees who are not in the protected class more favorably. *See Gordon v. United Airlines, Inc.*, 246 F.3d 878, 885–86 (7th Cir.2001). The parties agree that Hobson's job performance was satisfactory and that she is a member of a protected class.

 The postal service contested Hobson's ability to show an adverse employment action. The district court found that Hobson had met her burden, although it noted that the issue was a "close call." We disagree with the district court's conclusion: Hobson produced no evidence that the transfer constituted an adverse employment action.

After the transfer, Hobson's office was moved into the room next door to the Operations Department. The office space was comparable, but she complains about having to walk roughly 300 feet down the hall to get to the Operations Department, making it difficult for her to receive assistance from her colleagues. But Hobson never produced any evidence that having to walk to the room next door placed a significant burden on her ability to do her job, and a transfer involving "only a minor change in working conditions" does not constitute an adverse employment action. *Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir.1996). Hobson also claimed that she was not allowed to interact with members of the Operations Department, but admitted in her deposition that no one ever told her that she could not have contact with other members of the Operations Department, and therefore her separation was self-imposed. Hobson testified that her new supervisor's specialty was marketing and he did not understand her job, but she admitted that he was unable to answer her questions only three times in the year-and-a-half since her transfer. These kinds of minor or trivial changes in working conditions do not constitute an adverse employment action. *See Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 745 (7th Cir.2002).

Hobson's final claim of adverse employment action is that her job responsibilities were reduced because she could no longer answer telephone calls from field offices asking for help "relative to the delivery and collection of mail." Such calls are received by the Operations Department and its employees are responsible for answering the questions. Because Hobson's office is no longer in the Operations Department, she does not have the opportunity to answer the phone calls.

A decrease in job responsibilities can constitute an adverse employment action, but the decrease must result in significantly different job responsibilities. *Twisdale v. Snow*, 325 F.3d 950, 953 (7th Cir.2003) (holding that loss of duties is actionable only if it impedes an employee's career by preventing her from "maintain[ing] and improv[ing]" her skills); *Murray v. Chi. Transit Auth.*, 252 F.3d 880, 887 (7th Cir. 2001); *Dahm v. Flynn*, 60 F.3d 253, 257 (7th Cir.1994). Although Hobson could no

longer respond to phone calls, she continued to have contact with field offices after her transfer because she continued to make on-site audits "to ensure employees and management are following proper procedures, personnel are knowledgeable, and equipment is functioning properly." In her deposition, Hobson even admitted that "the duties specific to [her] actual job have not actually changed." Thus Hobson did not produce evidence showing that she suffered an adverse employment action.

■ Although the parties agree, and the district court found, that similarly situated employees were treated better than Hobson, our review of the record calls the district court's conclusion into question. Hobson produced a list of names of nine other married couples who worked for the postal service that were supposedly in reporting relationships, but she provided no evidence to support her allegations. Although Simmons, the Human Resources manager, admitted that there were some married couples in reporting relationships of which he was not aware, he indicated that when he found out that about the relationship, he separated them. Because Hobson did not produce sufficient evidence to show that similarly situated employees were treated more favorably or that she suffered an adverse employment action, she did not establish a prima facie case.

■ Even if Hobson had established a prima facie case, the postal service met its burden to articulate a non-discriminatory reason for transfer: Smith transferred Hobson "solely to eliminate the conflict of interest that existed by Ms. Hobson reporting to her husband." Hobson attempted to cast doubt on Smith's stated rationale for transferring her by pointing to the lack of a written policy against married couples reporting to each other prior to her transfer. Hobson also claimed that other non-interracial married couples

reported to each other and are still reporting to each other, and the postal service has not separated them.

To show pretext Hobson must cite to evidence from which a jury could infer that the decisionmaker's reason was not only false but also a cover for racial discrimination or retaliation. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); Jones v. Union Pac. R.R., 302 F.3d 735, 742–43 (7th Cir.2002). We have noted that "a determination of whether a belief is honest is often conflated with analysis of reasonableness. After all, the more objectively reasonable a belief is, the more likely it will seem that the belief was honestly held." Flores v. Preferred Tech. Group, 182 F.3d 512, 516 (7th Cir.1999).

Hobson produced no evidence from which a jury could find that Smith, as the decisionmaker, had a discriminatory or retaliatory intent. We have never required a non-discriminatory reason to be memorialized in a written policy, and Smith's belief that a married couple in a reporting relationship could produce a conflict of interest is eminently reasonable. Even Hobson's union representative understood "the need for Ms. Hobson to report to someone other than" her husband. Smith did not supervise any of the nine non-interracial couples that Hobson claims were or are in reporting relationships. Hobson has not shown any inconsistency in Smith's implementation of his belief that married couples should not report to each other. Because Hobson did not produce any evidence that the supervisor who made the decision had any racial motivation, she failed to show that his rationale for transferring her was pretextual. See Maarouf v. Walker Mfg. Co., 210 F.3d 750, 755 (7th Cir.2000) (discriminatory intent must influence ultimate decisionmaker).

Similarly Hobson has provided no evidence that Smith's decision to transfer her was done in retaliation for Van Schindel's grievance. Hobson argues that the short period of time between Van Schindel's grievance and her transfer requires an inference of retaliation, but suspicious timing without other evidence is not sufficient to create a triable issue. *See Stone v. City of Indianapolis Public Utils. Div.,* 281 F.3d 640, 644 (7th Cir.2002). Smith stated his belief that Van Schindel's supervisory position over Hobson created a conflict of interest before Van Schindel filed his grievance. Smith's first attempt to rectify the conflict failed when Van Schindel's transfer was deemed too harsh, so Smith transferred Hobson—the other person involved in the conflict of interest. Hobson has produced no evidence to show that it was retaliation, rather than the conflict of interest caused by her marriage, that led to the transfer. *See Place v. Abbott Labs.,* 215 F.3d 803, 811 (7th Cir. 2000) (concluding that an employer's decision to split up two workers whose soured romance affected the company's progress was not retaliatory). Therefore, the district court properly found that no jury could conclude that Hobson's transfer was racially motivated or retaliatory.

Because Hobson has failed to demonstrate that she suffered an adverse employment action, and even if she had, that the postal service's proffered reason for transferring her is pretextual, her racial discrimination and retaliation claims fail. Accordingly, we AFFIRM the judgment of the district court.