## In the

## United States Court of Appeals

### For the Seventh Circuit

———————

No. 07-1350

KECK GARRETT & ASSOCIATES,
INCORPORATED,

*Plaintiff-Appellant*,

*v.*

NEXTEL COMMUNICATIONS,
INCORPORATED,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 3265—**Rebecca R. Pallmeyer,** *Judge*.

———————

ARGUED NOVEMBER 9, 2007—DECIDED FEBRUARY 21, 2008

———————

Before CUDAHY, RIPPLE and ROVNER, *Circuit Judges*.

RIPPLE, *Circuit Judge*.  Keck Garrett & Associates, Inc.,
brought this diversity action against Nextel Communica-
tions, Inc. It sought recovery from Nextel for breach of
contract and in quantum meruit. After discovery, the
parties filed cross-motions for summary judgment. Keck
Garrett failed to defend its quantum meruit claim and
thereby abandoned it. The district court granted Nextel's
summary judgment motion on the remaining claim because

it found that Nextel had not violated any provision of the contract. Keck Garrett appealed to this court. It also filed two motions for sanctions against Nextel, one in the district court and one in this court.

For the reasons stated in this opinion, we affirm the judgment of the district court. We further hold that we lack jurisdiction to consider Keck Garrett's motion for sanctions.

# I

## BACKGROUND

### A.

Keck Garrett is an Illinois corporation with its principal place of business in Illinois. It markets communications and provides branding strategies for businesses. From 1997 to 2003, it provided product packaging design and related services to Nextel. Nextel is a Delaware corporation with its principal place of business in Reston, Virginia. Through its wholly owned subsidiaries, Nextel provides fully integrated wireless communication services.

Keck Garrett's dispute with Nextel centers on the Falcon Project, a packaging initiative that Nextel was planning for 2003. In 2002, Keck Garrett worked on Nextel's Condor Project, an industrial design and creative design project that supported Nextel's launch of a new platform of wireless devices developed by Motorola. At that time, Brian Lausch was the Nextel representative responsible for managing Nextel's relationship with Keck Garrett. At the press release for the Condor Project in late 2002, Lausch mentioned that Keck Garrett might be assigned to work on the Falcon Project in 2003.

The Falcon Project was never assigned to Keck Garrett. Nextel discussed the project with Keck Garrett in early January 2003, and it e-mailed to the company a confidential document entitled "Falcon Packaging Requirements." The document and the e-mail indicated that the industrial design plans were still uncertain and that Nextel did not know the scope of its creative needs.

In mid-January 2003, Nextel informed Keck Garrett that another company was working with it on the industrial design aspects of the Falcon Project. It did, however, inform Keck Garrett that it still planned to assign the creative packaging work to Keck Garrett. Several times, Nextel told Keck Garrett that it planned to prepare a "creative brief" that would describe its creative needs. Nextel indicated that, once it developed the creative brief, Keck Garrett would be able to determine the amount and type of work that would be required and to inform Nextel of how much that work would cost.

In late January, Lausch and his supervisor, Jim Obermeyer, held a conference call with representatives of Keck Garrett. They gave a PowerPoint presentation during that meeting in order to keep Keck Garrett informed of Nextel's plan for its brand. Nextel regularly kept its marketing partners up-to-date on its branding strategies, even if Nextel was not engaged with the partner in ongoing or upcoming projects.

On January 23, 2003, Nextel issued a $1 million blanket purchase order to Keck Garrett for that year's anticipated packaging work. Nextel issues written purchase orders to all agencies that work with it. These documents establish the terms and conditions of the relationship between Nextel and each of its vendors. The blanket purchase orders generally do not describe any particular work or project;

instead, they set forth the terms and conditions that will govern any work that the vendor may be asked to complete in a given time period. Nextel issues blanket purchase orders in part to expedite payment to vendors by eliminating the need to issue a separate purchase order each time an estimate for work is submitted. A blanket purchase order authorizes particular Nextel representatives to assign work to a given vendor, up to the value of the blanket purchase order, without having to seek internal authorization for additional purchase order numbers. Even with a blanket purchase order, however, the vendor had to send in an estimate for approval; the blanket purchase order only eliminated the need for a separately authorized purchase order for each estimate.

Nextel often issued blanket purchase orders to Keck Garrett over their years of work together. Keck Garrett understood that Nextel would pay only for work that it had approved on the basis of a signed estimate. Keck Garrett therefore usually began work only after Nextel approved an estimate of the costs. If Keck Garrett was in the middle of an assigned project for Nextel and it was determined that the project would exceed the approved estimate, however, Keck Garrett sometimes continued to work on the project even if it had not yet received a signed approval from Lausch. Nextel generally refused to move back deadlines for any reason; in this way, Keck Garrett was able to complete Nextel's projects on time, although at the risk of not receiving approval for the expanded project.

Vicki Hall, a financial analyst at Nextel, forwarded the 2003 blanket purchase order to Keck Garrett by e-mail to inform Keck Garrett of its purchase order number for that year. The 2003 blanket purchase order stated that it was a "Blanket Order for 2003 Phone & Accessory Pack-

aging" and listed Hall and Lausch as the persons autho-
rized to release funds. The "delivery date" for "2003 Blanket
Order for Phone & Accessory Packaging," the same type
of work that Keck Garrett had done for Nextel in the past,
was December 31, 2003. The blanket purchase order also
included the terms and conditions to govern their rela-
tionship.

Keck Garrett and Nextel agree that the 2003 blanket
purchase order is an integrated contract that is governed
by and subject to Delaware law. The parties further agree
that, under the blanket purchase order, the supplier must
pay Nextel's costs and reasonable attorneys' fees if Nextel
defends any action brought by a supplier and prevails.

Among other incorporated terms and conditions in the
blanket purchase order is a provision governing "pay-
ments and invoices." The provision states that the "Sup-
plier shall be paid upon the submission of proper in-
voices or vouchers, the prices stipulated herein for work
completed and/or Articles delivered and accepted, less
any proper deductions or setoffs." R.1 at 4. The provision
further requires that invoices include the "Purchase
Order number, item number, description of Articles or
work, sizes, quantities, unit prices, and extended totals." *Id.*
The 2003 blanket purchase order also permits Nextel
to make changes in writing to the general scope of the
blanket purchase order, including changes to the descrip-
tion, time and performance of services.

Shortly after the 2003 blanket purchase order was
issued, Keck Garrett submitted to Nextel invoices totaling
$19,700. The invoices used the purchase order number
on the 2003 blanket purchase order. The invoices were not
for Falcon Project work, but for work that had been as-
signed under the Condor Project. Nextel paid the invoices.

In the months after the 2003 blanket purchase order was issued, Keck Garrett and Nextel exchanged a series of e-mails about the Falcon Project. Nextel e-mailed several Falcon-related documents to Keck Garrett, including the packaging concept timeline for the Falcon Project and potential packaging structures that Nextel was considering. If Nextel had assigned the creative design project to Keck Garrett, Keck Garrett would have been placing its creative design on these packages. Some of the information was highly confidential. The e-mails also clearly stated, however, that the creative requirements for the Falcon Project were still to be determined. The creative design, the scope of which was still uncertain, was the aspect that Keck Garrett expected to complete.

In late February, Keck Garrett e-mailed Lausch about the progress of the packaging structure. Keck Garrett also asked when it might need to start "concepting" the designs. Keck Garrett indicated that the company was trying to plan in advance for scheduling purposes. Nextel stated again that it was planning to prepare a formal creative brief for the Falcon Project in the following weeks, but it had not yet done so.

In mid-March, Lausch e-mailed Keck Garrett to let it know that the creative brief was nearly complete and that he hoped to share it with Keck Garrett during the first week of April. Keck Garrett responded that it would get started on the Falcon Project as soon as it received the creative brief. Not having received the brief, Keck Garrett sent another e-mail as late as May 6 asking when Nextel would release the Falcon Project so that Keck Garrett could "get started."

On May 19, 2003, Nextel informed Keck Garrett that it would not need Keck Garrett's creative packaging work

on the Falcon Project. Nextel had been in the process of vetting new advertising agencies, and the agency it just had hired had offered to perform the packaging work at no additional cost. Nextel did not refrain from assigning work to Keck Garrett over performance issues; the decision was motivated purely by competitive business interests. Nextel never assigned the Falcon Project to Keck Garrett. Keck Garrett never received a written change order under the 2003 blanket purchase order after it was informed that it would not be assigned the Falcon Project.

Keck Garrett asked Nextel to reconsider its decision. Nextel confirmed that it would not reconsider, and it offered to pay any of Keck Garrett's outstanding invoices. Keck Garrett then billed Nextel for $145,000. The invoice, dated August 5, 2003, was for preliminary Falcon Project packaging and design research. The invoice did not seek recompense for work assigned to Keck Garrett by Nextel. Rather, it included salaries for people waiting for the Falcon Project and some amount for the insult of the termination.

After receipt of the invoice, Nextel asked Keck Garrett to supply documentation to support its charges. On September 4, 2003, Keck Garrett sent Nextel the following internal documents in response: the PowerPoint presentation Nextel had sent Keck Garrett; a few undated internal Keck Garrett memoranda; printouts of e-mails between Keck Garrett and Nextel; and other general materials, including newspaper articles and publications produced by third parties regarding color and shape. Nextel reviewed the materials and, on January 2, 2004, it sent Keck Garrett a letter denying payment. The letter stated:

> This body of work does not provide, nor do we feel it would have provided, any valuable or actionable findings, take aways or insights relative to the Falcon

packaging project. Again, Nextel marketing communi-
cation did not pre-authorize any preliminary com-
petitive research, design or design research and we
were very clear throughout our communications in
the first half of 2003 that the scope of our creative
requirements was uncertain.

R.52 ¶ 119. Keck Garrett acknowledges that Nextel did not
specifically ask it to perform any preliminary work.

In November 2004, Nextel again asked whether Keck
Garrett had any outstanding invoices. A month later, Keck
Garrett again requested payment of the $145,000 invoice
plus interest. Keck Garrett further stated that, if it did not
receive the payment, it would pursue legal action. In
May 2006, months after it had filed this suit against
Nextel, Keck Garrett sent Nextel a $1 million invoice that
referenced the 2003 blanket purchase order.

**B.**

Keck Garrett sought recovery against Nextel on two
theories. Characterizing Nextel's action as a breach of
contract, Keck Garrett sought $1 million, an amount that
it characterizes as the value of the 2003 blanket pur-
chase order. Keck Garrett also sought payment on the
$145,000 invoice under the contract. Alternately, Keck
Garrett sought recovery in quantum meruit.

After discovery, both parties moved for summary judg-
ment. Nextel and Keck Garrett stipulated that the 2003
blanket purchase order is a fully integrated contract sub-
ject to Delaware law. Nextel's motion requested sum-
mary judgment on both the breach of contract claim and
the quantum meruit claim. Nextel also maintained that,

if the court granted its motion for summary judgment, it was entitled to costs and reasonable attorneys' fees under the terms of the 2003 blanket purchase order.

In reply to Nextel's motion for summary judgment, Keck Garrett responded only to the breach of contract arguments; it contended that Nextel had repudiated the contract when it gave its advertising work to another company. In its own brief in support of its motion for summary judgment, Keck Garrett submitted that Nextel breached the 2003 blanket purchase order when it assigned Keck Garrett's packaging work to another company.

In evaluating the parties' positions, the district court first noted that neither Keck Garrett's motion for summary judgment nor its response to Nextel's motion for summary judgment addressed the quantum meruit claim. It determined, therefore, that Keck Garrett had abandoned that claim.

Second, the court concluded that Nextel had no obligation to pay the $145,000 invoice. The 2003 blanket purchase order explicitly stated that Nextel would pay upon Keck Garrett's "submission of proper invoices or vouchers, the prices stipulated herein for work completed and/or Articles delivered and accepted, less any proper deductions or setoffs." R.1 at 4. The court concluded that this provision required Keck Garrett to submit an invoice "for work completed," delivered to and accepted by Nextel. The court concluded that, even read broadly, "work completed" did not include work that was not requested by Nextel and was of no value to it.[1]

---

[1] The district court also determined that Nextel consistently had maintained its position throughout the litigation that the
(continued...)

Finally, the court determined that Nextel did not breach the 2003 blanket purchase order when it decided not to assign to Keck Garrett any work on the Falcon Project. The court concluded that the 2003 blanket purchase order did not guarantee that Nextel would assign any amount of work to Keck Garrett. The court considered and rejected four sets of reasons, propounded by Keck Garrett, why it was entitled to recover from Nextel: the contract's terms; an alleged oral agreement that predated the 2003 blanket purchase order; blanket purchase orders that Nextel had issued to Keck Garrett before 2003; and the argument that the contract, if found not to have been breached, was illusory.

The district court then granted Nextel's motion for summary judgment and denied Keck Garrett's motion. Keck Garrett timely appealed.

## C.

During the pendency of this appeal, Keck Garrett filed a motion in the district court for sanctions against Nextel. Keck Garrett and Nextel had participated in a Circuit Rule 33 settlement conference. Thereafter, during a proceeding regarding attorneys' fees before the district court, Nextel disclosed information that it allegedly had obtained during the settlement conference. Keck Garrett requested that the district court impose Rule 11 sanctions against Nextel for violating the confidentiality requirements of the Rule 33 settlement conference.

---

[1] (...continued)
work Keck Garrett had submitted to Nextel had not been requested or authorized by Nextel and was of no value to it.

Keck Garrett also filed a motion for sanctions in this court. That motion incorporated the motion to the district court. Keck Garrett specifically requested that, as a sanction, we strike Nextel's motion for attorneys' fees that was then pending before the district court.

## II

## DISCUSSION

The general principles that guide our review of a case coming to us on summary judgment are well-established. We review de novo a district court's decision on a motion for summary judgment and construe all facts in favor of the non-moving party. *Cherry v. Auburn Gear, Inc.*, 441 F.3d 476, 481 (7th Cir. 2006). On cross-motions for summary judgment, the court construes facts and draws inferences "in favor of the party against whom the motion under consideration is made." *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006) (citation omitted). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also In re United Air Lines*, 453 F.3d at 468.

Contract interpretation is a matter of law. *Cherry*, 441 F.3d at 481. If a contract is not ambiguous and does not require the court to look to extrinsic evidence, there are no factual disputes to preclude summary judgment. *See id.* However, "summary judgment is not warranted when there are genuine issues of material fact with respect to interpretation of a contract." *Id.*

**A.**

**1. The $145,000 Invoice**

Keck Garrett first submits that the district court erred when it granted summary judgment for Nextel on the issue of whether it should pay the $145,000 invoice. In resolving this issue, the district court made three factual determinations, each of which is supported by the record: that Nextel did not assign any work to Keck Garrett, that Keck Garrett did not complete any properly assigned work and that the work it had submitted was of no value to Nextel. The district court also correctly determined that, from the first time it refused to pay the invoice, Nextel had maintained consistently that it would not pay the $145,000 because Keck Garrett had not been assigned any work under the 2003 blanket purchase order and because the work Keck Garrett had completed was of no value to Nextel.

The record supports the district court's determination that the 2003 blanket purchase order did not require Nextel to pay the $145,000 invoice. The 2003 blanket purchase order required Nextel to pay an invoice only upon Keck Garrett's "submission of proper invoices or vouchers, the prices stipulated herein for work completed and/or Articles delivered and accepted, less any proper deductions or setoffs." R.1 at 4. Even read broadly, the term "work completed" could not be understood to encompass work that was not requested by and was of no value to Nextel. It is undisputed that the work Keck Garrett submitted was of no value to Nextel. It also is undisputed that the work submitted by Keck Garrett was not requested by Nextel. In fact, the "work" consisted largely of documents Nextel had sent to Keck Garrett.

Keck Garrett contends that Nextel only recently adopted the position that it refused to pay the invoice because the work was not requested by Nextel and was no value to it. Keck Garrett maintains that Nextel should not have been permitted to advance those arguments in its motion for summary judgment because they were inconsistent with its original position. We cannot accept this contention. In Nextel's original letter to Keck Garrett, it stated:

> This body of work does not provide, nor do we feel it would have provided, any valuable or actionable findings, take aways or insights relative to the Falcon packaging project. Again, Nextel marketing communication did not pre-authorize any preliminary competitive research, design or design research and we were very clear throughout our communications in the first half of 2003 that the scope of our creative requirements was uncertain.

R.52 at ¶ 119. This statement is consistent with Nextel's position in the district court and on appeal.

In its effort to establish that it was owed $145,000, Keck Garrett relied upon a handful of internal memoranda, e-mails between Keck Garrett and Nextel and documents that it had received from Nextel. The $145,000 invoice also included charges for employees waiting for the Falcon Project, even though Nextel had never requested that any Keck Garrett employee be placed on hold and even though the 2003 blanket purchase order did not place on Keck Garrett an obligation to accept any work from Nextel. The invoice also included a charge for the "insult" of Nextel's having chosen another firm for its creative packaging needs. None of these charges fall within the terms of the 2003 blanket purchase order because they do not represent "work completed and/or Articles deliv-

ered and accepted." The record simply will not support a conclusion that Keck Garrett completed work contemplated by the purchase order. Nor has Keck Garrett established any factual dispute that would deny Nextel summary judgment with respect to the $145,000 invoice.

## 2. Breach of the 2003 Blanket Purchase Order

Keck Garrett next submits that the district court erred when it held that Nextel had no obligation to pay it $1 million, the amount that Keck Garrett characterizes as the full value of the 2003 blanket purchase order. In Keck Garrett's view, Nextel breached the 2003 blanket purchase order by failing to assign it any work and by refusing to pay what it considers to be the full value of the contract. Keck Garrett characterizes the 2003 blanket purchase order as a commitment by Nextel to assign it $1 million worth of work in 2003. Alternately, Keck Garrett contends the 2003 blanket purchase order was a commitment to pay Keck Garrett $1 million, regardless of the amount of work Nextel assigned to or accepted from Keck Garrett. Keck Garrett believes that Nextel effectively repudiated the contract. Therefore, Keck Garrett reasons, it was not required to perform any work before becoming entitled to the $1 million value of the contract.

In reply, Nextel asserts that the 2003 blanket purchase order controlled the relationship between Keck Garrett and Nextel. The blanket purchase order was created in connection with Nextel's budgeting process and reflected its estimate that, during 2003, it would spend $1 million on packaging projects with Keck Garrett. In Nextel's view, the 2003 blanket purchase order does not guarantee any amount of work or any payment to Keck Garrett. Conse-

quently, Nextel contends, it did not breach the contract when it assigned the Falcon Project to another company.

Nextel is correct in its view that no term or condition of the 2003 blanket purchase order guarantees a minimum payment to Keck Garrett. The 2003 blanket purchase order simply authorized specific Nextel employees to release funds to Keck Garrett against the purchase order, up to a total of $1 million over the course of 2003. The blanket purchase order provided that Keck Garrett would be paid according to its terms only when Keck Garrett submitted proper invoices. A proper invoice was for work accepted by Nextel. Specifically, the 2003 blanket purchase order required Nextel to pay Keck Garrett only upon "submission of proper invoices or vouchers, the prices stipulated herein for work completed and/or Articles delivered and accepted, less any proper deductions or setoffs." R.1 at 4. No provision of the contract can be read to require that Nextel pay $1 million to Keck Garrett regardless of the amount of work that Nextel actually assigned to it. In the absence of "proper invoices" for work that Nextel had assigned and that Keck Garrett had completed and delivered, Nextel had no obligation to Keck Garrett.

Indeed, Keck Garrett has pointed to no term or condition in the 2003 blanket purchase order that guarantees that Nextel would assign any amount of work to Keck Garrett. Moreover, no provision of the document requires Keck Garrett to accept and perform any work. It did not prohibit Keck Garrett from accepting work on other projects, including projects for Nextel's direct competitors. Rather, the blanket purchase order required Keck Garrett to perform work in a particular manner and within a particular time frame if it accepted, throughout the

course of the year, a project from Nextel. It also provided remedies to Nextel in the event that Keck Garrett agreed to do particular work and failed to deliver it in a timely fashion.

We cannot accept Keck Garrett's assertion that these conclusions amount to a ruling that Keck Garrett can only recover under the purchase order in quantum meruit. Nor does analysis render the contract illusory. Once Nextel assigned work to Keck Garrett, the 2003 blanket purchase order guaranteed payment to Keck Garrett under the contract's terms. The document also established the conditions under which Nextel was required to accept work from Keck Garrett and regulated the manner in which it could change or modify its work requests once it had authorized Keck Garrett to begin working.

Keck Garrett also contends that Nextel breached an oral understanding that supplemented the 2003 blanket purchase order. Such evidence is not properly before the court, however, because the alleged oral agreement predated the fully-integrated 2003 blanket purchase order. Delaware law gives effect to integration clauses when the contract is a formal written one between sophisticated parties. *J.A. Moore Constr. Co. v. Sussex Assocs. Ltd.*, 688 F. Supp. 982, 987 (D. Del. 1988). "The parol evidence rule bars evidence of prior or contemporaneous agreements or negotiations that contradict the terms of an 'integrated' . . . writing." *Id.* In such circumstances, parol evidence may only be used "to show fraud, accident or mistake as a ground for rescission." *Id.*

Of course, if contract language is ambiguous, parol evidence may be used to construe ambiguous terms that require extrinsic proof to determine their meaning. *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059,

1061 (Del. 1997). However, "[c]ontract language is not ambiguous simply because the parties disagree on its meaning." *Id.* Ambiguity arises "only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Id.*

The alleged oral agreement constituted parol evidence under Delaware law. *J.A. Moore*, 688 F. Supp. at 987. Keck Garrett has not pointed to any ambiguous terms in the 2003 blanket purchase order whose meaning may be clarified by parol evidence. Moreover, the district court independently determined, and we agree, that there were no ambiguous terms in the contract because the 2003 blanket purchase order's provisions are not reasonably susceptible to different interpretations. Therefore, any evidence of a prior oral agreement cannot be used for clarification of the blanket purchase order, either.

Keck Garrett also asks the court to compare purchase orders that Nextel had assigned to Keck Garrett in 2001 and 2002 with the 2003 blanket purchase order. Such evidence, like evidence of the prior oral agreement, is prohibited by the parol evidence rule. *Id.*

The district court properly concluded that Nextel did not breach the 2003 blanket purchase order.[2]

---

[2] In a similar vein, Keck Garrett submits that Nextel's assignment of the Falcon Project to another company repudiated the 2003 blanket purchase order. Because we hold that Nextel did not breach the 2003 blanket purchase order, there is no need to examine whether Nextel's alleged "anticipatory repudiation" excused Keck Garrett's performance.

**B.**

Next, we must address Keck Garrett's contention that it is entitled to recovery in quantum meruit. Keck Garrett submits that, even if it may not recover under the 2003 blanket purchase order, it is entitled to some measure of the value of the work it performed for Nextel under a quasi-contract theory of recovery. We cannot accept this argument.

We note first that Keck Garrett waived its claim for recovery in quantum meruit. *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 728 (7th Cir. 2004). Nextel specifically requested summary judgment on the quantum meruit claim. Keck Garrett, however, did not defend that claim in its reply to Nextel's motion for summary judgment. By failing to present its argument to the district court, Keck Garrett abandoned its claim. *See id.* As we have held:

> It is axiomatic that issues and arguments which were not raised before the district court cannot be raised for the first time on appeal . . . . The rule is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues . . . [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence. To reverse the district court on grounds not presented to it would undermine the essential function of the district court. This rule is not meant to be harsh, overly formalistic, or to punish careless litigators. Rather, the requirement that parties may raise on appeal only issues which have been presented to the district court maintains the efficiency, fairness, and integrity of the judicial system for all parties.

*Boyers v. Texaco Ref. & Mktg., Inc.*, 848 F.2d 809, 811-12 (7th Cir. 1988) (second alteration in original) (citations and quotation marks omitted). Therefore, Keck Garrett waived the argument on appeal. *Id.*

Moreover, Keck Garrett seeks through this diversity action to recover in quantum meruit a sum that it could not recover under its contract with Nextel. Resolution of the contract claim, however, disposes of Keck Garrett's resort to quantum meruit or unjust enrichment. *Murray v. ABT Assocs., Inc.*, 18 F.3d 1376, 1379 (7th Cir. 1994). Illinois law does not permit a party to recover on a theory of quasi-contract when an actual contract governs the parties' relations on that issue. *Illinois ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992); *see also Murray*, 18 F.3d at 1379. Keck Garrett stipulated that the 2003 blanket purchase order was a contract that governed its relationship with Nextel. Therefore, the district court properly granted summary judgment to Nextel on Keck Garrett's quantum meruit claim. *Hartigan*, 607 N.E.2d at 177.

## C.

Finally, we turn to Keck Garrett's motion in this court for sanctions against Nextel. Keck Garrett submits that Nextel disclosed confidential information to the district court in violation of the confidentiality requirements of this court's Rule 33 settlement conference. Keck Garrett therefore requests that we enforce our rules regarding settlement proceedings by sanctioning Nextel. Keck Garrett specifically requests that we strike Nextel's pending motion for attorneys' fees.

Nextel submits, however, that the information was not obtained during a settlement conference. The statements that were revealed to the district court were made originally four days after the conference, without a settlement attorney present and during the course of the parties' discussion of a joint statement. Nextel submits that Keck Garrett therefore had no expectation of privacy in the information and that revealing it did not violate the rules of the settlement conference.

To the extent that Keck Garrett is attempting to appeal this matter, we are without jurisdiction. Keck Garrett filed a motion for sanctions in the district court, but, insofar as the record before us indicates, the district court still has the matter under advisement. A district court's decision on a post-judgment Rule 11 motion is a separate judgment that requires the filing of a separate notice of appeal. *Leahy v. Bd. of Trs.*, 912 F.2d 917, 923 (7th Cir. 1990); *see also Cassidy v. Cassidy*, 950 F.2d 381, 382 (7th Cir. 1991) (holding that decisions on the merits and post-judgment decisions on Rule 11 sanctions are separately appealable; until the district court "wraps up" the post-judgment Rule 11 issue, "there is no final and appealable decision"). No such notice of appeal has been filed; nor, as yet, is there a final and appealable decision. Therefore, we lack jurisdiction to hear this issue as an appeal. *See Leahy*, 912 F.2d at 923; *Cassidy*, 950 F.2d at 381.

To the extent that Keck Garrett is asking that we sanction Nextel, we believe that a ruling on such a request is premature. The confidentiality of settlement proceedings in this court is well-established. *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 517 (7th Cir. 2007); *In re Young*, 253 F.3d 926 (7th Cir. 2001). There is no question that we have the authority—and the responsibility—to

protect the integrity of Rule 33 settlement conferences. *See Sims*, 506 F.3d at 517; *Young*, 253 F.3d at 927. Although Rule 11 of the Federal Rules of Civil Procedure is not applicable *ex proprio vigore* in this court, *Sparks v. NLRB*, 835 F.2d 705, 707 (7th Cir. 1987), we certainly have the authority to discipline an attorney for misbehavior in relation to a Rule 33 settlement conference. *Young*, 253 F.3d at 927. A pleading that contains information in violation of settlement conference confidentiality must be withdrawn. Serious violations of a Rule 33 conference's rules or orders may be subject to additional sanctions. *Id.*

In most instances, the misbehavior in the appellate settlement process would be the exclusive responsibility of this court. Here, however, Keck Garrett's complaint is that Nextel violated the rule of confidentiality by a disclosure in a proceeding in the district court. Under these circumstances, the district court certainly also has the authority to address the accusation. Moreover, there are issues of fact that require resolution, a task within the special competence of the district court, but susceptible to resolution in this court only by the appointment of a special master. Under these circumstances, prudential concerns counsel that we defer adjudication of this motion until the parties inform us of the action of the district court.

## Conclusion

Accordingly, we affirm the judgment of the district court. The motion for sanctions shall be denied without prejudice to its renewal after the district court has ruled on the motion for sanctions now pending before it. Nextel may recover the costs of this appeal.

JUDGMENT AFFIRMED
MOTION FOR SANCTIONS DENIED WITHOUT PREJUDICE