# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 07-1751

MILDRED MACLIN,

*Plaintiff-Appellant*,

*v.*

SBC AMERITECH,

*Defendant-Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 2517—**Amy J. St. Eve**, *Judge*.

_____

ARGUED FEBRUARY 14, 2008—DECIDED APRIL 1, 2008

_____

Before RIPPLE, SYKES and TINDER, *Circuit Judges*.

RIPPLE, *Circuit Judge*.    Mildred Maclin brought this action against her employer, Ameritech, alleging discrimination on the basis of disability, race and gender.[1] After discovery, the parties filed cross-motions for summary judgment. The district court granted Ameritech's motion in its entirety. Ms. Maclin then appealed to this

_____

[1] The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

court.[2] For the reasons stated in this opinion, we affirm the judgment of the district court.

# I

# BACKGROUND

## A.

Ms. Maclin began working for Ameritech in 1994. By June 2001, she had been promoted to area manager, a second-level management position that has a salary and bonus potential in what Ameritech refers to as the MT market zone. In January or February of 2003, Ms. Maclin accepted a demotion in lieu of being laid off; she became a first-level manager with a salary and bonus potential in the MU market zone. At Ameritech, an employee's salary and bonus potential is determined by her pay grade, not her title. The MU market zone is one step below the MT pay grade; accordingly, it has a lower salary range and a smaller potential bonus.

In fall 2003, Ms. Maclin participated in developing what later became known as Bid Central, a new group at Ameritech. While Bid Central was being developed, it called its MU-level employees implementation engineers. Later, once the group became formalized, employees in the MU pay grade at Bid Central became known as complex bids managers. When Ms. Maclin was transferred to Bid Central, she remained a first-level manager with a salary in the MU market zone.

---

[2] We have subject matter jurisdiction pursuant to 28 U.S.C. § 1291.

Bruce Gregory became Ms. Maclin's supervisor around October 2003. Gregory assigned Ms. Maclin to the team lead role in the group. On October 16, 2003, Ms. Maclin's official title at Bid Central became area manager of complex bids.[3] This assignment as team lead and the change in title did not change her salary or bonus potential; she remained in the MU market zone. Although Ms. Maclin was not second-level management and was not in the MT market zone when she was team lead, she did have administrative and supervisory duties that other complex bids managers in the MU market zone at Bid Central did not have.

Ms. Maclin was injured in a car accident in December 2003. She took a medical leave of absence that began on December 17, 2003, approximately two months after she became the team lead at Bid Central. On December 23, 2003, Gregory appointed Dave Gentilini, a white male, as interim team lead in Ms. Maclin's absence.[4] While Ms. Maclin was still on medical leave, however, Gregory

---

[3] Each of Ms. Maclin's coworkers at Bid Central who were deposed had referred to her as area manager at some point during her tenure as team lead. Gregory testified that she had that title, but that she was not "really" an area manager because she was not in the MT market zone. Nevertheless, the record contains an e-mail in which he notes that another employee would be acting as an interim area manager during her absence.

[4] Gregory and other employees at Ameritech referred to Gentilini as an interim area manager during the first few months that he took over for Ms. Maclin. Later, when he permanently took over the position, Gentilini's title officially became team lead.

decided to make Gentilini the permanent team lead. In discussions with the human resources department, he stated that he had seen performance problems with her work, including incomplete or incorrectly performed assignments and mishandled projects. He also stated that Gentilini had performed exceptionally well in the position and that, by the time Ms. Maclin returned to work, Gentilini had held the position more than twice as long as she had held it.

Gregory also changed the nature of the team lead role during Ms. Maclin's absence. During Ms. Maclin's tenure as team lead, Gregory had been working with other departments at Ameritech to establish Bid Central and had relied on the team lead to act as a focal point for the concerns of the other complex bids managers. By the time Ms. Maclin returned to full-time work in June 2004, however, Bid Central was no longer in its formative stages. The team lead role lost its administrative duties and the other bids managers began reporting directly to Gregory rather than the team lead. In the modified team lead position that Gentilini held, none of the other complex bids managers reported to him. He also never performed the administrative duties that Ms. Maclin had performed before her leave, such as approving time sheets and reimbursement forms.

Ms. Maclin was not assigned to the modified team lead role when she returned from her medical leave. About a month before she returned to full-time work, her title was changed officially to complex bids manager. The change did not affect her salary range and bonus potential; she remained in the MU salary range where she had been before her leave. She did not possess the additional supervisory and administrative responsibilities she had held

before her absence, but neither did Gentilini possess those duties in the modified team lead position.

Ameritech's compensation guidelines list several factors that determine whether, and in what amount, a pay increase will be awarded and the amount of that award. One factor is the employee's current salary compared to that salary grade's target range. The guide also contains a matrix for determining the combined salary increase and bonus payment that an employee may receive. The matrix considers two factors: (1) current salary relative to that salary level's range, and (2) the employee's performance evaluation. An employee like Ms. Maclin, with a salary in the top third of her salary range who met, but did not exceed, her supervisors' expectations, may receive a combined raise and bonus not to exceed two percent of her salary. An employee like Gentilini, with a salary in the middle to lower end of the MU range who performed exceptionally well, qualifies under Ameritech's system for a larger combined raise and bonus.

In 2004, Ameritech awarded bonuses and pay raises based on the employee's performance in 2003. It awarded Ms. Maclin a 1.5% pay increase and a 1.5% lump sum bonus. Her combined pay raise and bonus exceeded the total that, according to Ameritech's compensation guidelines, she should have received for that year. Gentilini received a combined pay increase and bonus of 4% of his salary, an amount within the range prescribed by Ameritech's compensation guidelines for a person with his salary and performance review. Even after the raises were given, however, Gentilini was paid less than Ms. Maclin. He and two other members of Bid Central also were given an additional discretionary bonus that Ms. Maclin was not awarded.

**B.**

Ms. Maclin brought this action against Ameritech on April 27, 2005. She claimed that, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Ameritech had failed to reasonably accommodate her disability. She also claimed that Ameritech had demoted her from the team lead position because of her disability, in violation of the ADA, and because of her race and gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Finally, she claimed that Ameritech had discriminated against her on the basis of her disability, race and gender when Ameritech set her pay raise and when it denied her a discretionary bonus. Ms. Maclin did not allege any violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

After discovery, Ms. Maclin and Ameritech filed cross-motions for summary judgment. The district court granted summary judgment to Ameritech on each of Ms. Maclin's claims. Ms. Maclin timely appealed.

## II

## DISCUSSION

We review de novo the district court's decision to grant summary judgment. *Krieg v. Seybold*, 481 F.3d 512, 516 (7th Cir. 2007). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Krieg*, 481 F.3d at 516. When considering

cross-motions for summary judgment, the court must construe all inferences in favor of the party against whom the particular motion is made. *Krieg*, 481 F.3d at 516. The nonmoving party cannot succeed by resting on its pleadings; it must provide evidence on which a jury reasonably could find in its favor. *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 780 (7th Cir. 2007). "We may affirm a summary judgment on any ground that finds support in the record where the ground has been adequately presented in the trial court so that the non-moving party had an opportunity to submit affidavits or other evidence and contest the issue." *Lawshe v. Simpson*, 16 F.3d 1475, 1483 (7th Cir. 1994) (internal quotation marks omitted).

## A. ADA Claims

Ms. Maclin contends that she is disabled and that Ameritech discriminated against her on the basis of this disability. The district court determined that Ms. Maclin was not disabled as that term is defined by the ADA. Because a "plaintiff seeking to avoid summary judgment must demonstrate that there is at least a genuine issue of material fact as to whether [she] is disabled," *Squibb*, 497 F.3d at 780, the court granted summary judgment to Ameritech on all of Ms. Maclin's ADA claims.

The ADA prohibits discrimination against a "qualified individual with a disability." 42 U.S.C. § 12112(a). It defines a disability as "a physical or mental impairment that substantially limits one or more . . . major life activities."[5] *Id.* § 12102(2)(A). An employee is disabled if

---

[5] A person also may qualify as disabled under the ADA if she has a record of an impairment that limits a major life activity

(continued...)

she "is unable to perform [a major life] activity or is 'significantly restricted as to the condition, manner or duration under which' she can perform it, as compared to an average person in the general population." *Squibb*, 497 F.3d at 781 (quoting 29 C.F.R. § 1630.2(j)(1)) (alteration omitted). "Whether a particular impairment substantially limits a major life activity is a case-specific, individualized inquiry." *Id.*

Ms. Maclin submits that she is limited in the major life activity of sitting because she cannot sit for more than two hours at a time without severe pain. We have held that a more serious restriction on sitting, one that prevents a person from sitting more than thirty minutes at a time, does not qualify as a disability under the ADA. *Id.* at 784-85. Even taking at face value Ms. Maclin's contentions regarding her ability to sit, her assertion that she must take breaks from sitting every two hours "does not compare to the claims this court has held should survive summary judgment." *Id.* at 785. The district court therefore properly granted summary judgment for Ameritech on all of Ms. Maclin's ADA claims because she has not established that she has an ADA-cognizable disability. *Id.* at 786 ("Because we have concluded that [the plaintiff] is not disabled within the meaning of the [ADA], she is not protected by its substantive anti-discrimination provisions. We need not examine her [ADA] claims further.").

---

[5] (...continued)
or is regarded as having such an impairment, but Ms. Maclin has not contended that she is disabled under either of these definitions. 42 U.S.C. § 12102(2)(b), (c).

**B. Race and Gender Discrimination Claims**

Ms. Maclin also contends that Ameritech discriminated against her on the basis of her race and gender. Ms. Maclin attempts to support her Title VII claims using the indirect, burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this method, she must establish a prima facie case of intentional discrimination by showing that: (1) she is a member of a protected class; (2) she reasonably performed to Ameritech's legitimate job expectations; (3) she suffered a materially adverse employment action; and (4) Ameritech treated her differently than a similarly situated employee outside her protected class. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). Ms. Maclin's claims necessarily fail if she cannot establish these four elements.[6] *See id.*

This court has taken a broad view with regard to what qualifies as an adverse employment action, the third element of a prima facie case. Nevertheless, an action must be "significant" to be cognizable as discrimination. *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 660 (7th Cir. 2005). The action must involve more than a mere inconvenience or an alteration of job responsibilities. *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007). We have articulated three general categories of

---

[6] Under this method of proof, the burden shifts to Ameritech to "articulate some legitimate, nondiscriminatory reason" for its actions only if Ms. Maclin establishes all four elements of her prima facie case. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006) (citation omitted). In that event, Ms. Maclin would have the burden to show that Ameritech's justification is pretextual. *Id.*

actionable, materially adverse employment actions for the purposes of Title VII:

> (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

*Id.* (citing *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004)). "We have cautioned, however, that cases in the second category are to be distinguished from cases involving a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance." *Id.* (internal quotation marks omitted). Neither does a "transfer involving no reduction in pay and no more than a minor change in working conditions" qualify as an adverse employment action. *Id.* (citation omitted).

Ms. Maclin contends that she suffered an adverse employment action when she was denied a discretionary bonus, when she was denied a sufficiently large pay raise and when her title was changed upon her return to work. We consider each in turn.

### 1. Discretionary Bonus

Ms. Maclin contends that she suffered an adverse employment action when she was denied a discretionary bonus. This claim must fail as a matter of law. *Farrell v. Butler Univ.*, 421 F.3d 609, 614 (7th Cir. 2005); *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996). Ameritech's guidelines state that the bonus that Ms. Maclin was denied "is not an entitlement." R.69-2, Ex. F at 6. Furthermore, Ms. Maclin concedes that the bonus she was denied was a wholly discretionary payment by her employer. The "loss of a bonus is not an adverse employment action . . . where the employee is not automatically entitled to the bonus." *Rabinovitz*, 89 F.3d at 488-89; *see also Farrell*, 421 F.3d at 614.

Additionally, Ms. Maclin has not shown that Ameritech's reason for declining to give her a discretionary bonus was a pretext for discrimination. Ameritech contends that it did not award her a discretionary bonus because she only had met—not exceeded—her supervisor's expectations. Ameritech contends that three Bid Central employees—a white male, an Asian-American female and an African-American male—performed exceptionally well and therefore each was given an individual discretionary award. Ms. Maclin has offered no evidence that this explanation is a pretext for discrimination. She therefore has failed to carry her burden, and her claim must fail. *Raymond*, 442 F.3d at 610.

### 2. Comparatively Small Pay Raise

Ms. Maclin contends that she suffered an adverse employment action when she was given a smaller pay raise than Gentilini, her white, male coworker. Because Ms. Maclin abandoned this claim in the district court, she

cannot pursue it on appeal. *Keck Garrett & Assocs. v. Nextel Commc'ns, Inc.*, ___ F.3d ___, No. 07-1350, 2008 WL 451300, at *9 (7th Cir. Feb. 21, 2008).

Ameritech moved for summary judgment on Ms. Maclin's pay raise claim on two grounds: (1) Ms. Maclin could not show that anyone outside her protected classes was both similarly situated to her and more favorably treated, and (2) Ms. Maclin could not show that Ameritech's proffered reasons for giving Gentilini a comparatively larger salary increase were pretextual. In her response to Ameritech's motion for summary judgment, Ms. Maclin failed to defend her claim against these arguments. *See id.* She therefore abandoned the claim. *Id.*

Even if Ms. Maclin had not abandoned her claim, however, summary judgment for Ameritech would be appropriate. As noted by the district court, Ms. Maclin failed to establish at least one necessary element of her claim: that she was similarly situated to Gentilini. *Raymond*, 442 F.3d at 610. Ms. Maclin's only evidence that she is similarly situated to Gentilini is her own perceptions about her work performance, which cannot suffice to establish this element of her case. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002). Because she failed to demonstrate the existence of an issue of material fact on a necessary element, summary judgment on the pay raise claim was appropriate.

Moreover, even if Ms. Maclin had succeeded in establishing her prima facie case, she has failed to prove that Ameritech's proffered reasons for awarding her a comparatively small pay raise were a pretext for discrimination. *Raymond*, 442 F.3d at 610. Ameritech contended that it had determined Ms. Maclin's and Gentilini's raises in

accordance with the company's non-discriminatory matrix. The matrix takes into account two factors, the employee's salary relative to her pay range and the employee's performance review, and, based on those factors, it determines the total raise and bonus for which the employee qualifies. Ms. Maclin has offered no evidence that this explanation is a pretext for discrimination. She therefore has failed to carry her burden of proving that Ameritech's justification for its pay raise was pretextual, and her claim must fail. *See id.*

### 3. Change in Job Title and Duties

Finally, Ms. Maclin submits that she suffered an adverse employment action when, upon her return from medical leave, Ameritech refused to reinstate her as the team lead and changed her title. To survive summary judgment on this claim, she must establish that the change in job duties and title constitute an adverse employment action within the meaning of the statute. *Id.*

Ms. Maclin and Ameritech agree that she returned to work at the MU salary grade, the same grade that she had before her leave of absence. Gentilini, the new team lead, also had that salary grade. Ameritech contends that, because Ms. Maclin's position has the same salary, benefits and opportunities for promotion as the person in the team lead role, denying her the team lead position was not an adverse employment action. *See Grayson v. City of Chicago*, 317 F.3d 745, 750 (7th Cir. 2003).

Ms. Maclin does not offer any evidence that there is a difference, significant or otherwise, between her duties as complex bids manager and the team lead. She contends only that some time after Gentilini was made team lead,

Ameritech officially changed her title from area manager to complex bids manager. Ms. Maclin submits that she suffered an adverse employment action because that change in title resulted in a loss of prestige.

This contention fails to establish that Ms. Maclin suffered an adverse employment action. An adverse employment action must involve a material, substantive change in an employee's pay and responsibilities. *Grayson*, 317 F.3d at 750. An employee has not suffered an adverse employment action if her title changes but her position remains the same in terms of responsibilities, salary, benefits and opportunities for promotion. *Id.* Even a change in title that deprives an employee of prestige is insufficient if it lacks more substantive effect. *See id.*

Ms. Maclin contends only that Ameritech changed her title after she was placed in Bid Central and in the MU salary, and that it did so on the basis of her race or gender. It is undisputed that Ms. Maclin remains in the same salary grade that she held before her title changed in 2004 from area manager to complex bids manager. She has not established that the change had any significant or material affect on her job or opportunities for advancement. *See id.* Ms. Maclin has not shown that, if she had been given the team lead role upon her return to work, she would have had better responsibilities, salary, benefits or opportunities for promotion. *Id.* In fact, she conceded that the team lead position as it exists today does not have the responsibilities that she had as team lead in 2003. At most, Ms. Maclin contends that she lost prestige when Ameritech changed her title and began calling her a complex bids manager instead of an area manager. Therefore, she has failed to establish that she suffered an adverse employment action; she consequently cannot state a discrimination claim

because she failed to establish a necessary element of her prima facie case. *Id.*; *Raymond*, 442 F.3d at 610.

## Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED