NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 9, 2008
Decided August 21, 2008

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 07-3482

| | |
|---|---|
| ESSELONA JANE LARSON,<br>    *Plaintiff-Appellant*,<br>    *v.* | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division. |
| PORTAGE TOWNSHIP SCHOOL CORPORATION,<br>    *Defendant-Appellee*. | No. 2:05cv431<br><br>Philip P. Simon,<br>*Judge*. |

**O R D E R**

Portage Township School Corporation decided not to renew the contract of Esselona Larson, as principal of Myers Elementary School, after the 2004-2005 school year. The reasons stated for this decision were essentially Larson's poor leadership, poor decision making and insubordination. Larson then sued the township under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, alleging religious discrimination. The district court granted summary judgment for Portage Township, and Larson appeals. Because Larson

has not shown a genuine factual dispute of unequal treatment, we affirm the district court's grant of summary judgment.

The facts are construed in the light most favorable to Larson. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). In July 2003 Portage Township Schools hired Larson as principal of Myers Elementary School. Almost immediately after being hired, Larson began having minor disputes with Diane Zuick, a Jewish teacher at the school, and so both began documenting the conflicts.

The conflict between Larson and Zuick reached a boiling point in November when, at a staff meeting, Larson said, with an outstretched hand, "Heil Hitler" in response to several staff members having raised their hands. Larson, though, denied making the comment with a raised hand and claimed that she made it under her breath only because she was "nervous." Regardless, many of the teachers took issue with her comment. One teacher approached Larson after the meeting and told her that Zuick was Jewish and that some of Zuick's family members had perished in the Holocaust. Shortly thereafter Zuick approached Larson to inform her how "uncomfortable, painful, and offensive it was to see her salute Hitler." Larson apologized to Zuick for the comment, yet the conflict continued into the remainder of the school year.

In December 2003, Zuick complained to Larson about the Christian Christmas carols that were being played over the intercom in the classrooms. In response to Zuick's complaints, the carols were turned off in Zuick's classroom. The next day, unbeknownst to Larson, a school site-based team visited Zuick in her classroom to ask what she had against Christmas and to determine why she was "over-reacting to the Heil Hitler incident." Several teachers objected to the meeting and complained about it to Larson. On December 15, Zuick emailed Larson asking to be excused from the "All Student Sing-along" because "the majority of the songs are Christmas carols." Zuick also informed Larson in the email that, regarding the upcoming, first-ever "Staff Ham Breakfast," she "adhere[s] to the Jewish dietary laws." Larson responded that the music at the sing-along would be the same as in previous years, that there would be alternative menu items at the breakfast, and that she would not excuse Zuick from either event. The next day Richard Miller, the Indiana State Teachers Association (ISTA) UniServ Director, wrote to Superintendent George McKay on behalf of Zuick, raising concerns about the religious hostility Zuick had allegedly suffered and seeking a meeting to resolve the matter. And, at about the same time, the Jewish Federation of Northwest Indiana (JFNI) sent a letter to the Portage School Board Chairman demanding an inquiry into the Heil Hitler incident.

On December 18, Assistant Superintendent Barb Howe wrote Zuick a letter, assuring her that she could skip the "All Student Sing-along," explaining that her presence at the "Staff Ham Breakfast" was necessary but that she need not eat anything that would

make her "uncomfortable," and informing her that he had directed the school's staff to play only secular music on the school's intercom. A month later, Howe met with Larson to emphasize that Portage Township Schools did not condone her "Heil Hitler" remark and found it "inappropriate, offensive, and unacceptable." Howe also sent Larson a letter stating that although she did not purposefully intend to hurt Zuick and did not have a pattern of such behavior, Larson was expected to "adhere to School Board Policies and conduct [herself] in such a way that fosters acceptance of diversity."

On February 3, 2004, however, Zuick emailed her ISTA UniServ Director, Richard Miller, telling him that Larson was "incapable of changing her ways" and that nothing had changed. She claimed that Larson ignored her requests, refused to get back to her on pressing issues, and embarrassed her in front of other teachers. The dispute continued throughout the winter and into the spring, resulting in a meeting on March 15 between Larson, Zuick, Howe, Miller, David Lesich (ISTA President), and Dan Friel (the township's attorney). Howe's memorandum of the meeting laid out a set of expectations and guidelines for Zuick and Larson to follow when dealing with one another. Shortly thereafter, at her annual evaluation with Howe in May, Larson received a mixed review. Although she achieved all four of her listed goals, Larson also received a "Needs Improvement" mark, the lowest possible, in eight categories. Further, Howe noted that Larson "had a tendency to become defensive and then on the offensive . . . [and] would be well served to consider the problem rather than regarding each situation as an attack."

In July Superintendent McKay retired and was replaced by Michael Berta, who had taught with Zuick at Myers Elementary School in the 1970s. Within a few weeks of beginning the new position, Berta received several emails from Zuick about her ongoing dispute with Larson. As a result, Berta scheduled yet another meeting between Zuick, Larson, Friel, Miller, and Lesich. During the meeting the school's policies and expectations were once again reiterated. Larson, though, felt as if the participants had allowed Zuick to "personally attack" her at the meeting. The next day Miller sent Berta a memorandum explaining that Larson seemed unable "to accept responsibility for the fall out for some of her actions" while Zuick had "boundary issues." Over the next few months, Zuick and Larson failed to resolve their dispute, and thus a third meeting was held between the two parties where not much, if anything, was achieved. Berta then had Howe meet individually with Larson and Zuick, and used Howe's findings to issue another set of expectations, which warned of adverse consequences and required a signature from both parties. The dispute deteriorated even further on November 22 when Zuick filed a formal complaint of harassment against Larson, claiming that she had been harassed for the past 16 months "because I am Jewish."

In December Berta instructed Howe to standardize the township's 2004 holiday program so that every elementary school would perform the same songs.  Based on this decision, Howe worked with the music teachers to develop a song list that included a Hanukkah song, a Kwanza song, and several popular Christmas carols.  Immediately after receiving the list of songs, Larson emailed Howe to suggest that the list include "a Christian Christmas song."  On December 7 Berta responded to Larson's suggestion, stating that her response concerned him because it might be interpreted as "another action to irritate Ms. Zuick" and "another indirect attempt to put Diane Zuick in her place."  Berta further explained that the issue was not whether Christian songs should be included but whether Larson, as principal, "exercised good judgment in making the recommendation" to include the songs.  Three days later, Larson informed Berta that his interpretation was "erroneous" and that her suggestion to include Christian songs was "on behalf of the staff" and not merely her own personal view.  Berta, viewing Larson's memorandum in the context of her overall dispute with Zuick, determined that it constituted the "final straw." He therefore informed Larson on December 17 that the township would not be renewing her contract because of her "minimal" leadership skills and inability to accept constructive criticism.

On January 24, 2005, the Portage Township Schools Board of Trustees voted to "nonrenew" Larson's contract as principal of Myers Elementary School.  (It should be noted that although Larson was not continued in the administration leadership position as a principal, she was allowed to remain in the school system as a tenured teacher.  Rather than accept that assistance, Larson abandoned her employment with the system.) In November Larson sued Portage Township under Title VII, alleging unlawful termination. In response to Portage Township's motion for summary judgment, Larson argued that she had established a prima facie case of discrimination under the indirect, burden-shifting test by showing that (1) she is a member, as a Christian, of a protected class; (2) she met Portage Township's legitimate job expectations; (3) she suffered an adverse employment action; and (4) Zuick, a similarly situated non-Christian employee, was treated more favorably. Larson also contended that Portage Township's reasons for its decision to fire her were merely a pretext for religious discrimination based on her having recommended a Christian Christmas song for the holiday program.

In September 2007 the district court held that Larson could not make out a prima facie case of religious discrimination.  It reasoned that Larson and Zuick were not similarly situated because Zuick was a teacher at Myers Elementary whereas Larson was principal. And the court, intertwining its analyses of pretext and legitimate job expectations, determined that Larson failed to show any evidence of pretext or improper motive.  The court therefore granted summary judgment to Portage Township.  Larson now appeals.

Larson renews her arguments that she satisfied her prima facie case as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and that she submitted sufficient evidence of pretext. We review a grant of summary judgment de novo, construing the facts and inferences in Larson's favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008).

We have stated that where an employer offers a legitimate, nondiscriminatory reason for firing an employee, it simply "doesn't matter" whether the plaintiff presented a prima facie case of discrimination. *See Brewer v. Bd. of Tr. of the Univ. of Ill.*, 479 F.3d 908, 915-16 (7th Cir. 2007) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993)). The issue, instead, becomes whether the plaintiff has created a genuine issue of fact about the sincerity of that explanation and, in turn, whether the defendant discriminated against her. *See Hicks*, 509 U.S. at 511; *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 823 (7th Cir. 2006). Here, Portage Township has offered a legitimate, nondiscriminatory reason for terminating Larson—she possessed "minimal" leadership skills, could not accept or understand suggestions, and treated her supervisors as adversaries. Since, in this case, that explanation is the same as the second prong of the prima facie test, we address the second prong and pretext analysis at the same time.

Larson argues that her job was not in jeopardy in November 2004 and therefore the timing of Portage Township's decision to nonrenew her contract was suspicious because it coincided with her suggestion to include a Christian song in the 2004 holiday program. An employer's explanation for a termination is pretextual if it is "not the true ground" for its decision. *Griffin v. Sisters of Saint Francis, Inc.*, 489 F.3d 838, 845 (7th Cir. 2007). The focus of the inquiry is whether the employer's stated reason for the termination was honest. *See Hague*, 436 F.3d at 823. As here, this analysis often overlaps with the second element of the prima facie case. *See id.* at 822-23; *Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998).

Larson, who bears the burden of proving pretext, has not countered Portage Township's explanation for her termination with any evidence sufficient to create a factual dispute regarding whether it was the true ground for its decision. *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008) (plaintiff has burden of rebutting employer's proffered reason by showing it to be untrue rather than merely unfair or incorrect). There is ample evidence in the record demonstrating Portage Township's issues with Larson dating back to the beginning of the 2003 school year when she received a written reprimand for making the "Heil Hitler" comment in front of several teachers. Following the reprimand, Larson participated in several meetings regarding her performance as a result of her dispute with

Zuick. In May 2004 she received eight low grades on her performance evaluation in the areas concerning communication, organization, and competency. By November Larson had participated in numerous meetings with Zuick and Portage Township officials, all to no avail. And in November 2004, when Larson says that her job was not in jeopardy, Berta was "questioning deeply her ability to lead" Myers Elementary School. Larson's December 2004 actions concerning the inclusion of a Christian song in the holiday program defied Portage Township's prepared song list and were deemed yet "another indirect attempt to put Diane Zuick in her place." Larson has not created a genuine factual dispute on whether Portage Township's reasons for her termination were a pretext for religious discrimination, and she has not shown that she was meeting Portage Township's legitimate expectations.

Larson also challenges the district court's ruling on the fourth element of her prima facie case. To determine whether employees are similarly situated, we ask whether "there are enough common features between the individuals to allow a meaningful comparison." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd*, 128 S. Ct. 1951 (2008). A common sense determination, this inquiry typically examines whether the individuals dealt with the same supervisor, were subject to the same standards, or engaged in similar conduct. *See, e.g., Peirick v. Ind. Univ. Purdue Univ.-Indianapolis Athletics Dep't*, 510 F.3d 681, 688 (7th Cir. 2007). Here, Larson was in no way similarly situated to Zuick. As teacher and principal, they both had entirely different levels of experience and job responsibility, and they dealt with different supervisors. Moreover, Larson's contract was "nonrenewed" because of her minimal leadership skills and inability to accept suggestions, issues that Zuick simply did not have, particularly because it was not her responsibility as a teacher to lead the school. Larson has offered no evidence, other than the fact that both parties occasionally met with one another to discuss school matters and resolve their differences, that teachers at Myers Elementary School are subject to the same standards as the principal.

Accordingly, we AFFIRM the district court's grant of summary judgment in favor of Portage Township.